JAMES M. HARRELL, APPELLANT, vs. FRANCIS M. DURRANCE, APPELLEE.

1. Where a party applies in a civil suit for a continuance for *the term* on the ground of the absence of a witness, it must be shown by affidavit that the witness has been duly served with a subpœna, or a satisfactory reason assigned for the omission ; that he is absent without the consent of the party, directly or indirectly given ; that he resides in the county where the suit is pending, or if out of the county, good cause must be shown for not taking his deposition ; that the testimony is material; that the applicant expects to procure said testimony at the next term; that the application is not made for delay only ; that he cannot safely proceed to trial without the evidence of said witness ; and the party must further state the facts expected to be proved by said witness.

2. It is not error for the Court to refuse to allow a motion for the continuance of the cause, where the affidavit in support of it does not come up to the above rule.

3. A party need not set forth the very words of a note in the declaration ; he may, if he chooses, set forth what he considers the substance and legal effect of the note in this respect, and where he professes to give the legal effect and operation of the instrument declared on, and he does not mistake the legal effect, there is no variance.

4. Where the promise is to pay interest from day, in a promissory note, it draws interest from the date thereof, and an averment " with interest from date," gives the true legal effect and operation of the instrument.

5. The rule of law briefly expressed is, that " parol contemporaneous evidence is inadmissible to contradict, or vary the terms of a valid written instrument.'' Under this rule, all oral testimony of a *previous* colloquium between the parties, or of conversation or declarations at the time when it was completed or afterwards, is rejected.

6. Parol evidence is sometimes admissible where the language of the instrument is applicable to several persons, to several species of goods and chattels, &c., or the terms be vague and general, &c.

7. In a written bill of sale of cattle, where the marks and brands of the cattle are expressed, the maxim, " *expressio unius est exclusio alterius*," (the express mention of one thing implies the exclusion of another,) is applicable. The presumption is, that having expressed the marks and brands of some, they have expressed all which they intended.

8. The plaintiff in the Court below having read to the jury a promissory note, with a credit endorsed thereon, it is to be taken as an admission of the plaintiff that the credit should be allowed.

9. The Circuit Court, on a motion for new trial on the ground the jury have given excessive damages, should look into the evidence and see whether the

damages are excessive, and if so, either grant a new trial, or grant a new trial unless within a time to be fixed by them, the plaintiff remit so much as shall reduce them to the true sum.

Appeal from Hillsborough Circuit Court.

This case was decided at Tampa.

A full statement of the case is contained in the opinion of the Court.

*James T. Magbee* for appellant.

*Gettis & Mitchell* for appellee.

FORWARD, J., delivered the opinion of the Court.

The appellee brought his action of assumpsit in the Court below, upon a promissory note in words and figures as follows, viz : "On the first day of July next, I promise to pay Francis M. Durrance or bearer, seven hundred dollars for value received of him, this 13th day of November, A. D. 1858, with interest from day."

The declaration sets forth, "that whereas the defendant on the 13th day of November, in the year of our Lord one thousand eight hundred and fifty-eight, made his certain promissory note in writing, and delivered the same to the plaintiff, and thereby promised to pay to the plaintiff or bearer the sum of seven hundred dollars, with interst from date, on the first day of July next, after the date thereof, which period has now elapsed."

To which declaration the appellant filed six pleas. The first plea avers that said promissory note in said declaration mentioned was obtained "by fraud, covin and misrepresentation, that is to say, by the said plaintiff, and others in collusion with him, falsely and fraudulently representing to the said defendant that the whole and entire stock of cattle, and interest in cattle of the plaintiff, then running in the

woods or range, contained numbers sufficient, at the customary prices of stock cattle per head, to be worth, and that the same were worth five thousand dollars, and the said defendant, confiding in the representations of the plaintiff and others in collusion with him, for and in consideration of the said stock of cattle and interest in cattle of plaintiff, did give to the plaintiff for the said stock of cattle and interest in cattle of plaintiff, five thousand dollars, as follows, to wit: three negroes for the sum of three thousand and three hundred dollars, and two promissory notes signed by the defendant, and made payable to the plaintiff—one for one thousand dollars and the other for seven hundred dollars, the last mentioned promissory note being the one in plaintiff's declaration mentioned ; and the said defendant saith that the said stock of cattle and interest in cattle of the plaintiff then running in the woods or range, did not contain numbers sufficient, at the customary prices of stock cattle per head, to be worth five thousand dollars, as by the said plaintiff and others in collusion with him fraudulently represented to this defendant. And the said defendant saith that after he had learned of the fraudulent representations of plaintiff, and others in collusion with him, he, the defendant, offered to return said cattle to plaintiff in the same manner as they were delivered to him to wit: running in the woods or range, and to rescind said contract and sale, and the said plaintiff fraudulently refused and still refuses to receive the cattle and rescind the said contract, wherefore," &c.

The 2d plea sets forth the representations as to value of cattle, the purchase, execution of the note, &c., as in first plea, and avers that said stock of cattle and interest in cattle, did not turn out to be worth *five thousand dollars* as represented, &c., wherefore the consideration of the said promissory note hath *partially failed.*

The 3d plea sets forth the purchase of the cattle, the representations as to value, and alleges that the cattle were not worth more than the price and value of said three negroes, to wit: thirty-three hundred dollars, and that the said defendant hath now in his possession the said three negroes, wherefore the said defendant saith that the *consideration for said note has failed,* &c.

The 4th plea avers that there was *no consideration* given for the said promissory note.

The 5th plea sets forth the purchase of said cattle, the representation that the said stock of cattle was worth five thousand dollars, and that the plaintiff further represented that he, the said plaintiff, had not sold any steers out of said stock, except a few to one Willoughby Tillis, when in truth the said plaintiff had sold steers out of said stock of cattle to one Jacob Summerlin, &c.

The 6th was a plea of payment.

The pleas were all demurred to, and the demurrers overruled, with the exception of the demurrer to the fifth, which was considered good and well taken.

General replications concluding to the country were put in to the said 1st, 2d, 3d, 4th and 6th pleas, and it was upon the issues thus joined the cause went to trial.

Before going into the trial, the defendant moved for a continuance, on affidavit, of absence of witness, which continuance was denied, and the ruling of the Court thereon excepted to.

The following evidence, as appears by bill of exceptions, was adduced, to wit:

Be it remembered that when this cause was called for trial, the defendant moved this Court for a continuance, and presented to the Court the affidavit of defendant in support of his motion, which affidavit is marked filed on the seventh

23

day of April, eighteen hundred and sixty. The Court over-ruled the motion, to which ruling the defendant, by his counsel, excepted. A jury was then empannelled, and sworn to try the issues between the parties, and the plaintiff offered in evidence, a promissory note, in words and figures as follows : " On the first day of July next, I promise to pay Francis M. Durrance or bearer, seven hundred dollars for value received of him this 13th day of November, A. D. 1858, with interest from day.

JAMES M. HARRELL."

Endorsed.—" Received forty dollars on the within note, December 15, 1858."

When the above was offered, the defendant objected to giving the same in evidence under the declaration, upon the ground that the allegation and probater did not agree, and because the note stated with interest from day, it would be impossible for the Jury to fix a day from which to count interest. The Court overruled the objection, and defendant by counsel excepted. The defendant asked Joseph Howell the following question : "Did you or did you not understand from the parties at the time they called to have a bill of sale written, of what cattle they intended to convey by the bill of sale ?" This question was objected to by plaintiff's coun-sel, the objection sustained by the Court. The defendant asked William Durrance as follows, viz : " State whether or not plaintiff bought any of these cattle back from Sloan after Harrell had sold them to Sloan, viz : 'these cattle that you say that defendant claimed for other persons," which question was objected to by plaintiff's counsel. The objec-tion was sustained, the question overruled, and defendant, by his counsel, excepted.

The defendant then offered William S. Spencer, Tax Col-lector and Assessor, to prove that plaintiff had given in the cattle in controversy as his own taxable property, previous

to the sale of cattle made by plaintiff to defendant, and that no one give in cattle as the property of Lucy Ann Durrance, previous to said sale. The witness said that he refreshed his memory from the tax books, which books were made out by another person than himself; that he did not have the original scrips on which the taxable property was by him taken down; that they may be in his office, and that he might find them if he had time to look; that he had sworn to the correctness of the book from which he had refreshed his memory, and was ready and willing to swear to their correctness again; and that no one had given in cattle for Lucy Ann Durrance, previously to the sale of cattle from plaintiff to defendant, viz: previously to the thirteenth of November, 1858, during the time witness was Tax Assessor and Collector, but plaintiff give in cattle for the year eighteen hundred and fifty-nine, as agent for Lucy Ann and Celia Durrance, but no other year, according to the books and his recollection. This evidence was objected to on the ground that the books were not made out by the Tax Collector and Assessor, and that they were not memorandums made by himself, which objection was sustained, and this part of witnesses' evidence ruled out, to which ruling, defendant, by counsel, excepted.

The defendant then offered in evidence the tax books, which was objected to by plaintiff's counsel; the objection sustained, and defendant, by counsel, excepted.

The defendant asked John C. Oats the following question, viz: "What was the stallion horse that Harrell got from Green, in the cattle trade, worth?" which was objected to; the objection sustained, and defendant, by counsel excepted.

John C. Oats, witness, then stated that Harrell traded the horse he got from Green to Mr. English; defendant's counsel, then asked "for what amount did Harrell trade the horse to English," which was objected by plaintiff's coun-

sel; the objection sustained, and defendant, by counsel, excepted.

William S. Spencer, Tax Assessor and Collector, was asked the following question, viz: "State whether or not plaintiff paid any taxes for Lucy Ann Durrance for the year 1858," which was objected to; objection sustained, and defendant, by counsel, excepted. The said Spencer was asked to "state whether or not any person paid taxes for Lucy Ann Durrance, for cattle, for the year 1858," which was by plaintiff's counsel objected to; the objection was sustained, and the defendant, by counsel, excepted.

Defendant then introduced Jesse Durrance as a witness, and asked him "how many horses, asses, mules, sheep, swine, and other stock had plaintiff, except horned cattle, in 1858," which was objected to, objection sustained, and defendant, by counsel, excepted. And this witness was also asked by defendant to "state whether or not plaintiff purchased any of the stock that he had sold defendant, back from Sloan," which question was objected to; the objection was sustained, and the defendant, by counsel, excepted. And defendant also excepted to the several rulings of the Court in refusing to grant a new trial in said cause, upon the grounds and reason assigned by defendant for a new trial, filed with the clerk, and the said defendant prays that this, his bill of exceptions, may be signed, sealed, and made a part of the record in this case; which was done.

The plaintiff's attorney asked the Court to instruct the jury that unless the defendant has proven that the promissory note sued upon was given for the stock of cattle here in controversy, then they ought to find for the plaintiff; which instruction was given.

The Court instructed the jury, that in order for the defendant to sustain his plea of fraud, the first plea, he must have proved that the plaintiff fraudulently represented to

the defendant that the whole and entire stock of cattle, and interest in cattle of plaintiff, remaining in the woods or range when the defendant purchased the cattle from the plaintiff, contained numbers sufficient, at the customary prices of stock cattle, per head, to be worth five thousand dollars.

If they find from the evidence there was such a fraudulent representation, and that the defendant, as soon as he reasonably could after finding such representations were false, offered and attempted to rescind the contract and return the cattle, then they should find for the defendant. But if they find that the plaintiff made such representations as to the number of the cattle which were incorrect, but the plaintiff did not know them to be incorrect, then they should not find for the defendant under that plea, neither should they find for the defendant under that plea if the plaintiff did make such fraudulent representations, if it appears from the evidence that the defendant, after finding out that the representations were false, held on to the cattle, and used or controlled them.

That in order for the defendant to sustain his plea of total failure of consideration, it is necessary for him to have shown that there was nothing valuable given by the plaintiff for the said note.

That if they find from the evidence, that the note sued on was a part of the sum of five thousand dollars, which the defendant was to give the plaintiff for cattle, in number sufficient, at the customary price of stock cattle at the time the cattle were sold, to amount to five thousand dollars, and they are satisfied from the evidence that there was not the number of cattle to amount to five thousand dollars at said rate, then they should deduct from the note the value of the number of cattle at said rate, as it has been proved to them the cattle were short of the number sold.

If neither of the defendant's pleas have been proved, they

should give the plaintiff a verdict for the full amount of the note sued on, with interest from the time it became due.

The jury found a verdict for the plaintiff, and assessed the damages at ($758 91,) seven hundred and fifty-eight dollars and ninety-one cents.

Motion was made for a new trial, which was denied, and judgment entered for plaintiff—from which judgment appeal is taken to this Court.

The errors assigned are :

1st. The Court erred by overruling the appellant's motion for a continuance.

2nd. The Court erred in allowing the promissory note to be given in evidence to support the declaration.

3rd. The Court erred by ruling out the following question asked Joseph Howell, viz: "did you or did you not understand from the parties, at the time they called to have a bill of sale written, of what cattle they intended to convey by the bill of sale ? "

4th. The Court erred by ruling out the following question propounded by appellant to William Durrance, viz: "state whether or not plaintiff bought any of these cattle back from Sloan, after Harrell had sold them to Sloan, viz: these cattle you say defendant claimed for other persons. "

5th. The Court erred in ruling out a part of Wm. S. Spencer's testimony, and in not permitting said Spencer to answer questions.

6th. The Court erred in not allowing the tax book to be given in evidence for the defendant.

7th. The Court erred by ruling out the following question propounded to John C. Oats, viz: "what was the stallion horse Harrell got from Green in the cattle trade worth ? "

8th. The Court erred by ruling out the following question propounded to John C. Oats, after the said Oats was allowed to state, that Harrell traded the horse he got from Mr.

Green to Mr. English, viz: "for what amount did Harrell trade the horse to English?"

9th. The Court erred by ruling out the following question propounded to William S. Spencer, viz: "state whether or not plaintiff paid any taxes for Lucy Ann Durrance for the year 1858;" also the Court erred by ruling out the following question propounded to the said Spencer, viz: "state whether or not any person paid taxes for Lucy Ann Durrance, for cattle, for the year 1858?"

10th. The Court erred by ruling out the following question propounded to Jesse Durrance, viz: "how many horses, asses, mules, sheep, swine, and other stock, had plaintiff, except horned cattle, in 1858?" and the Court erred by ruling out the following question propounded to the witness, viz: "state whether or not plaintiff purchased any of the stock that he had sold defendant back from Sloan?"

11th. The Court erred by not granting a new trial to the appellant, defendant in the Court below, upon the ground and reasons assigned by him, the appellant, defendant in the Court below, and the Court erred in its several instructions to the jury.

The act of 7th January, A. D. 1853, provides that when the Circuit Court "shall refuse to allow and grant a motion for the continuance of the cause, (such refusal) shall and may be assigned for matter and cause of error, upon any writ of error sued out or appeal taken to the Supreme Court."

By the provisions of this act, this Court is required to revise the order refusing continuance, and to do this, we are to look to the affidavit in support of the motion for continuance, and see whether the Court below erred in its refusal.

The affidavit sets forth that Thomas Underhill is a material witness, &c., but in stating what he expects to prove by this witness, he does not state that he cannot prove the

same matters by any other witness ; nor that he cannot safely proceed to trial without his evidence; nor that he expects to procure said testimony at the next term. Motions for continuance are so often resorted to, not for the purpose of substantial justice, but for delay only, or because due and proper diligence has not been exercised in procuring testimony, that our Courts should require that all the requisite grounds within the general rule, and important qualifications to this rule, be embraced in the affidavit in support of the motion.

The general rule, in a civil suit, is well established to be that where a party applies for a continuance for the term, on the ground of the absence of a witness, it must be shown by affidavit that the witness has been duly served with a subpœna, or a satisfactory reason assigned for the omission ; that he is absent without the consent of the party, directly or indirectly given ; that he resides in the county where the suit is pending, or if out of the county, good cause must be shown for not taking his deposition ; that the testimony is material ; that the applicant expects to procure said testimony at the next term ; that the application is not made for delay only ; that he cannot safely proceed to trial without the evidence of said witness, and the party must further state the facts expected to be proved by said witness.

If we try this affidavit by this rule, it will be seen that it is defective. We are therefore, of the opinion, the Court did not err in refusing the continuance as respects the application on the ground of the absence of this witness. The affidavit in support of the continuance as respects the other witness, Jesse Durrance, although not fully within the above rule, as it states he was duly subpœned, &c., and that he does not know of any other witness by whom he can prove the facts stated, and that attachment has issued, was sufficient to continue the case from day to day during the term.

No such motion as the latter, however, seems to have been made, and as we see in the record of evidence that this last mentioned witness was sworn on the trial, we presume no such motion was necessary. The opinion of the Court is that the Court below committed no error in refusing the continuance.

The next error assigned is, that the Court, under the pleadings, erred in permitting the promissory note to be read in evidence. The expression in the promissory note is, "*with interest from day.*" It is contended by the counsel for the appellant, that the declaration should have laid this portion of the note with a videlicit, averring what was the meaning of the parties to the note in the use of the word "day." That the legal import of the word "day" is to give interest from the day the note fell due, and not from date as alleged in declaration. The averment in the declaration is "with interest from date."

It will be observed, that it is not attempted to state the very words of the note in the declaration. The plaintiff has set forth what he considers the substance and legal effect of the note in this respect. If the pleader has not mistaken the legal effect of the instrument, it will be considered sufficient. The rule in this respect is, that where the party professes to give the legal effect and operation of the instrument declared on, and he does not mistake the legal effect, there is no variance. 1 Chitty on Pleading, 306.

This brings the Court to consider whether the legal effect of said promissory note was correctly set forth in the declaration, wherein it is averred as calling for "interest from date."

Were we to treat the words "from day," as mere surplus-age, the legal effect of the promissory note would be that it carries with it interest from date. Those words being re
24

tained, in our opinion, do not alter effect of the instrument. The promissor we think contracted to pay the said amount with interest from date.    The legal effect being thus, there was no variance between the declaration and the note, and alle- gata and probata, according to the said rule of pleading, corresponded.   The opinion of the Court is that there was no error in the Court's admitting the said promissory note in evidence.

The next error assigned  is that the Court erred by ruling out the  following  question  asked  Joseph Howell, viz : " did you or did you not understand from the parties at the time they called to have a bill of sale written, of what cattle they intended to convey by the bill of sale ? "

Upon the inspection of the bill of exceptions, it appears that immediately preceding this question, the said witness had testified, that the parties came to him, and he " *drew the writing between them*."    He was asked as to the contents of an instrument in writing, and the question leads to a variance by parol evidence of a written contract ; it asks of witness, " what cattle they *intended* to convey " by the bill of sale.   The record shows that this bill of sale in writing reads as follows :

" STATE OF FLORIDA,        )    Know all men by these pres-
    Hillsborough County.   ∫ ents, that for and in considera- tion of the sum of five thousand dollars to me in hand paid by James M. Harrell, I have this day bargained, sold and delivered to the said James M. Harrell, a certain stock of cattle, marked as follows, to-wit: Upper bit in one ear, swallow fork, poplar leaf in the other ; some marked crop in one ear, swallow fork in the other ; some marked under slope in each ear ; some marked crop and under bit in one ear, swallow fork and under bit in the other ; some marked swallow fork and under bit in one ear, crop and under cross nick in the other—the said cattle *all branded* with D. Some

have S., K. and T. and D., for him, the said Harrell; to *have and to hold* the said stock of cattle to his own use and benefit; and I, the said Francis M. Durrance, do *sell him my entire stock and claim.*

In witness whereof I have hereunto set my hand and seal, this 13th November, 1858."

The question, in the first place, was irrelevant to the issues, which were as we have seen, 1st. Fraudulent representations as to number and value. 2d Partial failure of consideration as to value. 3d. Total failure of consideration. 4th. Want of consideration. 5th. Payment. Secondly, the question was to elicit the *intention* of parties previous to a written instrument, by evidence of a *previous* conversation, that is to say, a conversation previous to the signing or execution of said bill of sale. The rule of law briefly expressed is, that "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." All oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed or afterwards, is rejected, because it would tend, in many instances, to substitute a new and different contract for the one which was actually agreed upon. 2 Phil. Ev., 350; Boorman vs. Johnston, 12 Wendell, 573.

Parol evidence is sometimes admissible where the language of the instrument is applicable to several persons, to several species of goods, &c., or the terms be vague and general, &c. In all these cases and the like, parol evidence is admissible of *any extrinsic circumstances* tending to show what person or persons, or what things were intended by the party, or to ascertain his meaning in other respects. The case at bar is not one within this exception of infringement. We see, upon looking at the bill of sale, that it is therein expressly stated what are the *marks* and *brands* of the cattle intended to be transferred. There is no necessity for parol

evidence to show what cattle was intended; their meaning is made plain by the designation of the marks and brands. On the part of the appellant, however, it is contended, that under the sweeping expression, "*do sell him my entire stock and claim*," the appellee intended to include a certain other stock known as the Lucy Ann stock, and marked swallow fork and half fleur de lis in one ear, crop and under bit in the other, two dewlaps and branded oZ.

As it will be observed, the pleadings present no issue involving an enquiry as to the Lucy Ann stock; they present the issue of misrepresentation, fraud and want and failure of consideration and payment. The question proposed to the witness was to ask what was *intended* to be transferred.

In the bill of sale, as we have already seen, the parties expressed the marks and brands of the cattle. The maxim *expressio unius est exclusio alterius*, (the express mention of one thing implies the exclusion of another,) is peculiarly applicable here. The presumption is, that having expressed the marks and brands of some, they have expressed all which they intended. We are of the opinion the Court below did not err by ruling out the question.

The view which we have taken of the issues joined in this cause, and the construction given to the bill of sale, disposes of the 4th, 5th, 6th, 7th, 8th, 9th and 10th errors assigned. We think the questions proposed were irrelevant, and therefore the Court did not err in ruling them out.

The 11th error assigned is that the Court erred in its instructions to the jury, and in not granting a new trial. The evidence that this promissory note was given for this stock of cattle, is very slight and circumstantial; but admitting it established, we are unable to find any evidence in the bill of exceptions going to show that the appellant made any such fraudulent representations as are charged in the pleas, while there is evidence that the appellant realized over five thousand

dollars from the sale of the cattle. The pleas are none of them sustained, and we see no error in the instructions of the Court. It is contended that excessive damages were given by the jury, in that they did not allow the endorsement upon the note as a credit. In reply to this the appellee contends that the endorsement of the note was not in evidence. The bill of exceptions expressly states that the note and endorsement were put in evidence, and that the same was put in evidence by the plaintiff. The plaintiff in the Court below having read to the jury a promissory note with a credit endorsed thereon, it is to be taken as an admission of the plaintiff that the credit should be allowed.

Upon a calculation of the amount due upon the promissory note at the time the verdict was rendered, we ascertain that there was then due the sum of $716 26, consequently the verdict of the jury was for $42 67 too much, and to that extent the damages assessed were excessive. The important inquiry at this point is what was the proper course of the Court below, on discovering that excessive damages had been assessed—should new trial have been granted, or reduction of the verdict ordered?

In the case of Jansen vs. Ball, 6 Cowen, 631, the Court say: "It seems to me this evidence did not authorize a verdict for a greater amount; as the damages are susceptible of calculation with considerable accuracy, I am not inclined to subject the parties to the expense of a new trial, if the plaintiff consent to remit a portion of the damages." See also Lane vs. Mullins, 2 Adolphus & Ellis, N. S. 254.

The Court below ought to have pursued this course or granted a new trial. The opinion of the Court is that there was error in not granting the new trial for this cause, or in not ordering a new trial unless the plaintiff shall within a number of days to be named remit $42 67, parcel of the damages recovered. The judgment in the Court below is *reversed*,

.and this cause remanded to the Circuit Court in and for Hillsborough county, with instructions to said Court to grant a new trial, with costs to abide the event of the suit, unless the appellee shall, at the now next term of said Court, remit $42 67, parcel of the damages recovered, and in case he does remit to enter judgment accordingly; and it is further .ordered that the appellee do pay the costs which have accrued -in this Court.