Lott M. Ballard v. The State of Florida.—Syllabus.

LOTT M. BALLARD, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The allowance of separate trials on the application of parties jointly indicted rests in the sound discretion of the trial court.

2. That one of two parties jointly indicted is not ready for trial, is not good ground for a severance on the application of the former; nor is the mere fact that one of the two will confess the alleged homicide as having been in self-defense on his part' whereas the other denies it as to himself.

3. The refusal of a severance moved for on the ground that important evidence for the justice of the cause would be excluded on a joint trial, and be admitted on a severance, and that the evidence which will be given directly against one will prejudice the cause of the other if they are tried jointly, such motion being supported by an affidavit of the defendants to the effect that "the facts in the above motion are true;" can not be held to have been error in the absence of a statement of the evidence which it was claimed would be excluded, or be prejudicial.

4. Motions for a continuance are in the discretion of the trial court, and the action of that court on them will not be reversed unless there has been a palpable abuse of that discretion to the disadvantage of the accused, or whereby his rights may have been jeopardized. The rules as to granting continuances are substantially the same in civil and criminal causes, except as modified by the differences in procedure in the two classes of causes; yet affidavits for continuances should be scanned more closely in criminal than in civil cases, because of the superior temptation to delay presented by the former class. All facts necessary to show a clear abuse of discretion to the injury of the accused must be presented, and wherever the record is either silent or uncertain on any point material to establish such an abuse, the presumptions are all in favor of the correctness of the ruling denying the motion.

Lott M. Ballard v. The State of Florida.—Syllabus.

5. On the 24th of October, 1892, the accused moved for a continuance, supporting it by his affidavit stating that he was charged with murder as having been committed on the 27th day of the preceding month, that the indictment was returned on the 15th day of the stated October, and that the State announced ready for trial on the 24th, and that he could not safely proceed to trial for the reason that he had not had sufficient time to prepare for his defense, that he had been in the county jail from the time of the alleged homicide to the time of making the affidavit, and had had no opportunity to prepare his defense and to consult counsel to the satisfaction of himself, and to properly inform them of all the facts in the case: *Held*, That there was no error in refusing to grant a continuance.

6. Where a motion for a continuance is made on the ground of great public excitement in the minds of the people of the county, which has put the accused in danger of violence, necessitating guards for his protection, and is prejudicial to the accused, and gives just and reasonable cause for apprehending that a fair jury can not be obtained, and such motion is not supported by any evidence corroborative of the affidavit of the accused, and there was no attempt to show that the accused was prevented by the stress of circumstances detailed from getting corroborative evidence; the exercise of discretion of the trial judge will not be interfered with.

7. Generally, continuances will not be granted on account of the absence of a witness as to the good character of the accused. It is not error to refuse a continuance which is sought to enable the accused to procure the testimony of witnesses in another state to testify to the good character of the accused during a period spent by him in the penitentiary of that state, to which he was sent from this State, where his usual place of abode was at the time of his being sent there, and to which place of abode he returned immediately after his discharge from prison.

8. Where the affidavit for a continuance does not show when it was that the accused learned that the absent witness, for whose

testimony the continuance is sought, would testify as alleged, the refusal of the coutinuance will not be interfered with by an appellate court.

9. At the common law no one of several persons jointly indicted for crime can be a witness for another of them until the case has been disposed of, by verdict or plea, as to the one offered; though it seems it is not necessary to proceed to sentence after verdict, or plea, of guilty. Nor do Sections 1095 and 2863 of the Revised Statutes have the effect to make a witness of a joint, or other, defendant in a criminal cause. Section 2908 of the Revised Statutes regulates the status of such defendants as to making, under oath, statements to the jury of their defenses, and it is not error to refuse to permit one of two defendants, jointly indicted, to be sworn as a witness in behalf of the other before the case has been disposed of as to the former.

10. It is not error to refuse to charge the jury that they may find a verdict of manslaughter in the second degree, in a cause which has arisen since the Revised Statutes went into effect. No degrees of manslaughter are recognized by that Revision.

11. It is not error to refuse a charge which invades the exclusive domain of the jury in dealing with the credibility of the accused in making the statement of his defense.

12. It is not error to refuse to charge a jury: "That a person whose life has been threatened by another is not bound to quit his business, but may pursue his ordinary lawful occupation, and if he meets with the person who has threatened him, and such person makes any overt act showing an intention to do the threatened person great bodily harm, or to take his life, the person threatened may thereupon lawfully kill the person so threatening him; although it may afterwards turn out that the deceased was unarmed, and the defendant in no danger." The charge is defective in that it does not embrace the idea that the defendant reasonably believed when killing the deceased that he was in danger of losing his life, or sustaining great bodily harm.

Latt M. Ballard v. The State of Florida.—Statement of Case.

13. A defendant may as a reasonable man have believed that he was in danger of losing his life, or of incurring great bodily harm, and yet the killing may not under some circumstances be justifiable or excusable. One instance is where he has brought about the necessity without being reasonably free from fault. Again, the circumstances of a case may at least make it a question for the jury whether a killing was not in pursuance of a previously formed design to kill, instead of having been the result of a mere purpose of self-defense, although at the time of the altercation the first overt act may have come from the person slain.

14. Where the verdict is so clearly sustained by the evidence, that any error which there may have been in refusing to give an instruction asked by the accused, is palpably error without injury, a new trial will not be granted.

Writ of error to the Circuit Court for Marion county.

STATEMENT.

E. T. Bugbee, a witness for the State, testified that on the day of the killing, and soon after it, as he was going out of Ocala with J. W. Smith, he met the plaintiff in error coming in alone on Ocklawaha avenue, with his pistol in his hand, and was asked by him if he was going out on this street, and having replied that he was, Ballard said to him : "I wish you would see that old man Shafer gets home all right" ; and witness inquiring of him, why, he replied : "I have shot him," and in response to a further inquiry as to the reason for shooting him stated that Shafer had threatened his life, and he calculated he would get ahead of him. Witness then asked him if he sup-

posed he had killed him, and Ballard held up his revolver, looked in it and said he had put four bullets, or had shot him four times; witness could not tell exactly which, but it was one or the other expression. The pistol, he said, looked like the one in court. Witness then drove on fast and found Shafer lying in his wagon dead. On cross-examination he said that plaintiff in error stated that Shafer had threatened his life and that he did not calculate to let him get ahead of him, and that he did not say anything about Shafer horsewhipping him. J. W. Smith's account of what passed between Bugbee and the accused was that the latter asked the former if he was going out that way, and Bugbee said he was. and Ballard said : "I've just shot Mr. Shafer, and I wish you would see that he gets home all right," and Bugbee asked, "What did you do that for?" to which Ballard replied that Shafer threatened him, and "I thought I'd get ahead of him." Bugbee said: "Did you kill him?" and then defendant took up his revolver so (indicating) and turned the cylinder and said: "I shot him four times." Another witness, P. W. Whitesides, a deputy sheriff, says that on the same day, shortly after the homicide, plaintiff in error came in with his pistol and laid it on the desk, and that he told witness he had shot Shafer, and that Shafer had fallen down in his wagon and gone on towards home; that Shafer had overtaken him in the road and commenced making his threats at him and he shot him; that Shafer had said to

him: "You have come back, have you? I will fix you this time," or something of that kind. That he didn't know if he had killed Shafer, but had shot him four times. Witness stated moreover that Ballard also told him that he expected that he would have to do that when he came here or be hurt himself, or something. That the above was all the defendant said. M. F. Hood, the justice of the peace on whose desk the pistol was laid by Ballard, says that Ballard stated he had shot old man Shafer, and that it was the same old trouble he had been talking to Hood about previously, and that Shafer had threatened him and he had shot him four times, but did not know if he had killed him. Witness would not say that Ballard had not said that he would not be suspended if he had killed Shafer, and that he felt justified in what he had done, and therefore surrendered himself, but that he, witness, had no recollection of such language, and had given the language as near as he could recollect.

There was also testimony to the effect that prior to being sent to the Ohio penitentiary, the plaintiff in error had been arrested in Marion county, and brought before Hugh E. Miller, Esq., United States Commissioner, on a charge of sending obscene literature through the mails, and that after being arrested, and on his way to that Commissioner's office, he told the officer who arrested him that it didn't make any difference to him if they sent him up for ten years that he would be damned if he didn't kill Shafer when he

came back; and that after being sentenced in the Federal court at Jacksonville for this offense, he threatened vengeance against witnesses and others, Shafer being a witness. The killing occurred the day after Ballard returned from his confinement in the Ohio prison.

Dr. Moody, a physician and surgeon of thirty-five years' practice, and who saw the body of the deceased about five minutes after the shooting, and when it was still in the wagon, testified that two bullets entered at the back of the deceased, and that one of them came out on a line with the left nipple. The defective manner in which his testimony is presented in the bill of exceptions, does not enable us to understand from it where the other came out. These bullets he says were the cause of death. He also says, there was a slight abrasion on the right side over the ribs, like something had fallen against him, or something rough had fallen against him, a burnt sort of a mark like a shot had "glazed" him. His feet were right against the dash-board of the wagon, and surrounded by his milk cans, and his body was a little turned over. There was a sack of bran in the wagon, and it seemed as if he had fallen on that. His face was looking directly out and under the left spring of the wagon; it was a spring-seated wagon. His feet were against the dash-board, and his head under the seat, which was a little further back than ordinarily, pushed back as if he had done it in struggling.

No weapon was found about the deceased but a pocket knife in one of his pockets.

The plaintiff in error, in giving his statement, says: "While I was walking out in the woods, three or four feet from the road, and my brother was walking in the sand in the road, we heard a wagon rolling along behind us about one hundred yards. He (my brother) looked back and said, 'There is old man Shafer, don't have anything to say to him; let him pass on and, may be, he will not quarrel with you any more.' I told him I was not going to quarrel with him any more. I said to my brother: 'Let's increase our gait,' and he said all right, and got out into the hard of the road where it was better walking; and we increased our gait and walked something like fifty yards, and I looked to see if we were making any on him. Just as I looked back he struck into a trot and got up with us just as we got around the corner of Moody's grove. I was walking on one side. In all roads there is always a little path on each side. Well, I was walking in one of these and my brother was walking in the other. When he got up even with us he commenced by saying: 'I see you are out to start again, but I'll fix you this time.' About the time he got half the sentence out I looked at him that way, and he was sitting in his wagon with his milk cans around his feet, and he raised up like this (indicating) and was pulling his lines of his horse. It was a hot day and I had my coat off and was walking along that way to keep cool. He raised up like this and struck me with his whip, and as he struck me the second time I had a pistol in my hand; he kind of struck me across the arm (indi-

eating) and the pistol fired, and I reckon I missed him that time. I shot two rapid shots in succession. The jerking and the rebound of the pistol came very near throwing it out of my hand. When he went to make the third lick he was kind of raised up in his wagon. Previous to this, and when the second shot was fired, his horse jumped and threw Shafer back in his seat. When he struck round that way I was as far from him as from me to that fourth juryman, and then I shot twice in rapid succession. He sort of raised in his seat; he seemed to be pulling at the lines, that way (indicating). That is the secret of the shooting affair."

Lawrence Ballard, of whose statement the plaintiff in error actually got the benefit, and which benefit, it seems from the bill of exceptions, it was intended that he should have, says in such statement: "And we walked on at a peart walk, and Shafer, he kept coming on and overtook us, and as he did so he says to my brother: 'I see you are back again, but I will fix you sure this time;' and the manner that he said it attracted my attention and I stopped and looked around, and as I did so Shafer struck my brother. As he did this my brother drew his pistol and made the remark: 'I guess you'll fix me;' whereupon he struck him a second time with one of these common cow whips, and as he did so it dropped around his hand, making him fire the pistol, and he fired two rapid shots in succession, and at the second shot Shafer's horse took fright and jumped forward, and as the horse jumped forward he raised from his seat to strike the third time, and

as he did so my brother shot the last two shots.    He was near the right-hand wheel of the wagon."

The remainder of the statements need not be given.

The other facts in the case are stated in the opinion of the court.

*Miller & Spencer* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

RANEY, C. J. :

The plaintiff in error and Lawrence Ballard were indicted at the Fall term, 1892, of Marion Circuit Court, for the murder of Charles Shafer on the 27th day of September of the same year, and tried at the same term in October.  The plaintiff in error was found guilty of manslaughter and sentenced to twenty years confinement at hard labor in the State prison.  Lawrence Ballard was acquitted.

I. The defendants moved for a severance on the grounds:

1st. That Lawrence Ballard was ready for trial, and insisted upon being tried, and was not able to give the bail required by the court, and that Lott M. Ballard was not then ready for trial;

2d. That the defenses of the separate parties were antagonistic, as Lott would admit the homicide on his part in self-defense, and Lawrence would deny it on his part;

3d. Important evidence for the justice of the cause would be excluded on a joint trial, and be admitted on a severance ;

4th. The evidence which will be given directly against one of the defendants would be prejudicial to the cause of the other if they should be tried jointly. The motion was supported by an affidavit of the defendants stating that "the facts in the above motion are true." ·The motion was denied.

The practice of trying separately persons jointly indicted grew out of the public inconvenience resulting from the exercise by each joint defendant of his several right to challenge jurors peremptorily. Each of them being entitled to the same number that the law accords him on trial of a separate offense, it was found that *venire* and *tales* were frequently exhausted, and great delay and serious public inconvenience were produced thereby, trials being at times prevented from this deficiency of jurors at the same assizes; and hence the plan of the crown's having separate trials, in case the joint defendants would not agree to join in their peremptory challenges, was adopted in furtherance of public justice. At the common law it is not the right of the defendants to demand separate trials ; on the contrary, the allowance of separate trials on their application is a matter resting in the sound discretion of the trial court. We have no statute regulating the subject, or making it a matter of right in a defendant. 1 Bishop's Crim. Pro., secs. 1018, 1028, 1032 ; Wharton's Criminal Pleading and Practice, sec. 309 ; U. S. vs. Marchant, 12 Wheaton, 86 ; Whitehead

vs. State, 10 Ohio St., 449 ; U. S. vs. Gibert, 2 Sumner, 19 ; Bixbee vs. State, 6 Ohio, 86 ; State vs. Soper, 16 Maine, 293 ; State vs. Smith, 2 Iredell, 402 ; Hawkins vs. State, 9 Ala., 137 ; and, according to some authorities, where there is no such statute it seems that the denial of it as against the application of the defendants is not assignable as error ; Maton vs. People, 15 Ill., 536 ; Thompson vs. State, 25 Ala., 41 ; Commonwealth vs. Robinson, 1 Gray 555 ; whereas in other cases it is said that it will not be done unless some injury be shown to have followed. Bixbee vs. State, and Whitehead vs. State, *supra*. We are not prepared to admit that an abuse of discretion in this matter that was palpably to the injury of the accused, who has been convicted on the joint trial, can not be reached by an appellate court ; still the view we take of the merits of the motion now before us relieves us from having to decide finally this particular point of practice at this time.

In U. S. vs. Marchant, *supra*, it is said : In our opinion it is a matter of sound discretion to be exercised by the court with all due regard and tenderness to prisoners according to the known humanity of our criminal jurisprudence. In Commonwealth vs. James *et al.*, 99 Mass., 438, where two persons were indicted jointly for murder, and it was shown that evidence would be offered of a confession by one implicating both himself and the other, it was held by the Supreme Court of Massachusetts, before whom the trial was, that the motion of the latter for a severance ought to be granted, but the Attorney-General declared that

he would not offer the stated evidence, and therefore the trial proceeded against the defendants jointly.

Wharton, in section 310 of his work mentioned above, says that where the defenses of joint defendants are antagonistic, it is proper to grant a severance. We do not doubt that it is, yet we would say of Roach *et al.* vs. State, 45 Tenn., (5 Cold.), 39, cited by him, that in so far as it founds its conclusion on the idea that the rejection by one joint defendant of jurors acceptable to or accepted by the other constitutes such antagonism, or is a ground for severance, it is erroneous. U. S. vs. Marchant, and other authorities *supra.* In Mask *et al.* vs. State, 32 Miss., 405, two defendants charged as principals in the second degree, moved for a severance, basing their motion on an affidavit in which each stated that he had no connection with the murder with which a third was charged as principal in the first degree, and that they each believed they could not have a fair and impartial trial if tried jointly with the third ; and the denial of the motion was held not to be error.

As Lawence Ballard is not before us, he having been acquitted, we do not consider the motion in so far as it relates to him. In so far as Lott is concerned, our view of the general grounds of the motion are as follows : As to the first ground, we think the fact that Lott was not ready for trial was not a reason for a severance on his application. Any good reason he may have had for not being ready would have addressed itself more properly to the discretion of the

court as a ground for a continuance of the cause; and any good ground for a continuance applicable only to Lott. may have been a reason, of more or less force for a severance, at the instance of the State or on the motion of Lawrence, for the purpose of an immediate trial of the latter. As to the second ground, our judgment is that t here is no antagonism of defenses shown by the mere fact that one of two defendants will confess the alleged homicide as having been in self-defense on his part, while the other denies it as to himself. The two lines of defense do not antagonize the defendants; neither line necessarily conflicts with the other, but each may fully recognize the other. As to the third and fourth grounds it is sufficient to say that it does not appear what the particular testimony or evidence referred to was; and further that in the absence of a statement, in proper form, of the testimony which it was claimed would be excluded on or by reason of a joint trial, and of that which would be introduced thereon and be prejudicial to one of the defendants, we do not see how the trial judge could have held that there would be an exclusion of important testimony in the one case or an admission of prejudicial evidence in the other; and it is certain that we can not affirm that any error has been committed without any opportunity for an inspection of the testimony. There was no error in refusing the application for a severance.

II. The next assignment of error is as to the refusal of the motion made by ths plaintiff in error for

a continuance. The motion was made on October 24th, 1892, the same day the preceeding motion was made and denied. It is supported by his affidavit, which states: That he is charged with the murder as having been committed September 27th, 1892; that the indictment was returned on the 15th day of October, and the State announced ready for trial on the 24th day of the same month, and that he could not safely proceed to trial for the following reasons:

1st. He has not had a sufficient time to prepare for his defense, that he has been in the jail of Marion county from the time of the alleged homicide to the time of making of the affidavit, and has had no opportunity to prepare his defense, and to consult counsel to the satisfaction of himself and to properly inform them of all the facts in the case. 2d. That after the commission of the alleged homicide, there was great public excitement in the minds of the people of Marion county, and such public excitement continues up to the present time, and such public excitement agitates the public mind to a high degree, and hath great prejudice against affiant, and that there is just and reasonable cause to apprehend that by reason of the excited state and condition of the public mind a jury obtained at this time might not be free to render justice to the defendant at this term of court. That there has not been since the time of the alleged homicide sufficient time for the public excitement to cool down. The public excitement was so intense there was great danger that violence might have

been done to affiant, by reason whereof extra guards had to be employed for the security of his person from the violence of the public since affiant has been in custody.    That the said excitement in the public mind is sufficient to intimidate and swerve the jury.    3rd. That for nearly two years past he has been in the State of Ohio, and absent from the State of Florida; that he desires to summon witnesses from said State, or take the deposition of witnesses residing therein, to whom he is personally known, to show his character of peace and quietness for two years past, and the general state of his mind during that time.    4th. Affiant expects to procure the testimony of one Samuel R. Smith that Shafer said that he would cow-hide affiant if he "was returned here," and would run him out of the State, and affiant has not procured the testimony of Smith because he has but recently learned that such will be his testimony, and that Smith's residence is not known to him, but he is in some part of the State of Florida, and affiant expects to have Smith here at the next term of the court.

Motions of this character are in the sound discretion of the trial court, and the action of that court on them will not be reversed unless there has been a palpable abuse of that discretion to the disadvantage of the accused, or whereby his rights may have been jeopardized.    The rules as to granting continuances are substantially the same in civil and criminal causes, except as modified by the differences in procedure in the two

classes of causes; yet affidavits for continuances should be scanned more closely in criminal than in civil causes, because of the superior temptation to delay presented by the former class. All facts necessary to show a clear abuse of discretion to the injury of the accused must be presented, and wherever the record is either silent or uncertain on any point material to establish such an abuse, the presumptions are all in favor of the correctness of the ruling denying the motion. Harrell vs. Durrance, 9 Fla., 490; Barber vs. State, 13 Fla., 675; McNealy and Roulhac vs. State, 17 Fla., 198; Blige vs. State, 20 Fla., 742; Denham vs. State, 22 Fla,, 664; Newberry vs. State, 26 Fla., 324, 8 South. Rep., 445; Garner vs. State, 28 Fla., 113, 9 South. Rep., 835; Hodge vs. State, 29 Fla., 500, 10 South. Rep., 556; Robinson vs. Dibble's Admr., 17 Fla., 452; Sanford vs. Cloud, 17 Fla., 532; Livingston vs. Cooper, 22 Fla., 294; Common Law Rule 49.

The first of the alleged grounds for a continuance is well disposed of by calling attention to the fact that the affidavit shows no effort at preparing his defense, nor any obstruction thereof, no refusal to the prisoner of an opportunity to see and confer with his counsel, nor any delay in procuring counsel, no reason why the time was not sufficient for preparing his defense and consulting satisfactorily with counsel, and properly informing them of the facts of the case. This part of the affidavit states no facts which may not be entirely

consistent with absolute laches, or even designed omission of attention to the matter of his defense. As to the second ground, the mere fact that there is in the record neither any corroborative evidence of its statements, nor any attempt to show that the accused was prevented from getting such evidence by the stress of circumstances detailed, is sufficient reason for us to refuse to review the discretion of the Circuit Judge in refusing the motion for a continuance on this ground. This is the conclusion we came to in Adams vs. State, 28 Fla., 511, 10 South. Rep., 106, after full consideration as to a motion for a change of venue, where the circumstances detailed were not less serious in appearance and there was no corroborative proof nor evidence of any attempt of the character indicated or of any prevention thereof. The third ground finds its explanation in the fact shown by the testimony adduced on the trial, that the prisoner's alleged absence from the State was spent in the penitentiary of the State of Ohio, to which he was committed by a sentence of the United States court here. In McNealy and Roulhac vs. State, 17 Fla., 198, it is held that a continuance will not generally be granted on account of the absence of a witness as to the good character of the accused. People vs. Wilson, 3 Parker's Crim. Rep., 199. Informed as we are that Marion county, in this State, was the usual place of the prisoner's abode before his condemnation to prison life, and that he returned there immediately after his discharge from that

custody, we see no reason for further consideration of the ground—a ground which can hardly claim to have received that serious consideration which must necessarily have excluded it from presentation to the court. The fourth ground is, to say nothing of other deficiencies, fatally defective in that it does not appear when or how recently he learned that Smith would testify as is claimed. It may not have been at a time that the courts would deem recent, viewed as to the subject-matter at hand.

It is not improper to call attention to the fact that the affidavit does not even state that the application for continuance was not "made for delay only." Harrell vs. Durrance, *supra*, and Gladden vs. State, 12 Fla., 562, 570.

III. After the State had announced that it rested on the testimony which it had introduced, the plaintiff in error asked to have the co-defendant, Lawrence Ballard, sworn as a witness in behalf of Lott, to the granting of which request the State Attorney objected, and the objection having been sustained by the court, an exception was taken to the ruling. Counsel for the plaintiff in error base their assignment of error on Sections 1095 and 2863 of the Revised Statutes, which had become operative before the homicide under consideration took place.

Under the common law no one of several persons jointly indicted for crime can be a witness for another of them until the case has been disposed of, by ver-

dict or plea, as to the one 'offered as a witness;
though it seems it is not necessary to proceed to
sentence after a verdict or plea of guilty. 1 Bishop's
Crim. Pro., sec. 1020, 1021; Adams vs. State, 28 Fla.,
511, 534, 10 South Rep., 106, 112. Section 1095 of the
Statutes provides, with certain limitations not neces-
sary to be noticed, that no person in any court or be-
fore any officer acting judicially shall be excluded from
testifying as a witness by reason of his interest in the
event of the action or proceeding or because he is a
party thereto; and the other section relied on (2863) is
that the provision of law relative to the competency of
witnesses in civil cases shall obtain also in criminal
cases. The former of these sections regulates the com-
petency of witnesses in civil cases as affected by inter-
est in or being a party to an action or judicial proceed-
ing. There is another section (1093) which speci-
fies the crimes, a conviction of which, in our courts,
renders the convict incompetent to testify; and still
another (1097) which renders other convictions admissi-
ble as to the credibility of the testimony of witnesses.
The fact, however, is that none of these sections have
any effect, or were intended, to make a witness of a
joint or other defendant in behalf of either himself or
another defendant, or to change the common law in this
regard. They relate to witnesses proper, or, as the
term is ordinarily understood, and it is Section 2908 of
the same Revision that regulates the right of the ac-
cused in a case like this. It provides that in all crim-
inal prosecutions the accused shall have the right of

making a statement to the jury under oath of the matter of his or her defense. This section has been frequently construed, as the annotation of it shows, and as will be found by reference to the subsequent case of Ortiz vs. State, 30 Fla., 266, 11 South. Rep., 611; from which decisions it will be seen that he is not given the status of a witness within the meaning of the three former sections. There was no error in the ruling of the judge; nor is it contended that the circumstances were such as made it the duty of the trial judge, after the testimony was all in, to submit the case of Lawrence Ballard to the jury before submitting that of the plaintiff in error, or that any application to have this done was made, in order to qualify the former as a witness. Adams vs. State, 28 Fla., 534-5, 10 South. Rep., 112.

It may be remarked here that the defendants made statements under Section 2908 of the Revision.

IV. The remaining assignments of errors relate to the refusal of certain instructions to the jury which were offered by the plaintiff in error. Of these there were three, numbered respectively 4, 6 and 7, either of which, had it been given, would have involved the trial court in the absurdity of charging the jury that they might return a verdict of manslaughter in the *second degree*, when the fact was and is that at the time of the homicide, and ever since, no such degree of manslaughter was or has been known to our laws, the Revised Statutes, which went into effect June 13th, 1892, having abolished the degrees existing under the former statutory divisions of crime.

V. Another instruction, the fifth, the refusal of which is complained of, is: If you find from the evidence in this case, that the only persons present at the time of the killing were the deceased and the two defendants, and that no other person saw the act committed, and if you find that the defendants have made a reasonable statement of the facts and circumstances of said killing, and the facts stated by them are not denied or contradicted by any other witness on the part of the State, or proved to be untrue by any other evidence in the case, the jury will be warranted in believing what the defendants state, and with finding a verdict in accordance with said statements of the defendants.

Independent of the fact that there was evidence adduced by the State, of statements made by the plaintiff in error, soon after the killing, which tended to prove him guilty of a much higher degree of homicide than that of which he has been convicted, we think the judge was entirely correct in refusing to instruct the jury, in the manner requested, as to the credibility of the accused parties. It would have invaded the exclusive domain of the jury. He subsequently, of his own motion, charged the jury in substance that the sworn statement of each of the prisoners was to be considered and weighed as evidence, and compared with the other evidence in the case, and that the jury were authorized to give such weight to the sworn statements as in their judgment they were entitled to

in view of all the other evidence in the case, and that they were the exclusive judges of the evidence, and of the weight it was entitled to, and of the credibility of the witnesses. These instructions were proper and did not trench upon the exclusive province of the jury as to the weight and credibility of the testimony and witnesses and defendants.

VI. The eighth, ninth and tenth charges requested and refused were:

8th. The court charges you that a person whose life has been threatened by another is not bound to quit his business, but may pursue his ordinary lawful occupation, and if he meets with the person who has threatened him, and such person makes any overt act showing an intention to do the threatened person great bodily harm, or to take his life, the person threatened may thereupon lawfully kill the person so threatening him, although it may afterwards turn out that the deceased was unarmed and the defendant in no danger whatever.

9th. The jury must put themselves in the place of the defendant Lott Ballard, and look at matters as they appeared to him at the time of the killing, and if it appears to the jury from the evidence that Lott had heard of threats of the deceased made against him, and that he as a reasonable man believed from any overt act of Shafer at the time of the killing that he was in danger of his life or of great bodily harm from the acts, motions, and words of the deceased, then the·

court instructs you that such killing was neither murder nor manslaughter, but justifiable or excusable homicide, and you should find the prisoner not guilty.

10th. It is not nesessary for the person assailed to retreat from the attack upon him unless in his judgment and view of things as a reasonable man, it may be safely done. If the defendant, in view of the nature of the assault, as a reasonable man was justified in believing that he was equally as unsafe to retreat as to stand his ground, then he was in law justified in standing his ground and repelling assault by assault.

The refusal to give each of these instructions was excepted to.

The first of these three instructions is defective in that it does not embrace the idea that the defendant reasonably believed when killing the deceased that he was in imminent danger of losing his life or sustaining great bodily injury. Smith vs. State, 25 Fla., 517, 6 South. Rep., 482; Lovett vs. State, 30 Fla, 142, 11 South. Rep., 550. The second one is also not accurate. A defendant may as a reasonable man have believed that he was in danger of losing his life, or of incurring great bodily harm, and yet the killing may not under some circumstances be justifiable or excusable. One instance of this is where he has brought about the necessity himself, without being reasonably free from

fault. Again, in Lovett vs. State, *supra*, we said: "The law regards homicides committed under such circumstances of apparent danger as done under the impelling influence of a reasonable belief that the stated necessity exists, and therefore excuses the killing the same as if the necessity had been real, instead of merely apparent, but it does not regard the belief as immaterial. If it did, its principle would be to justify homicide when the slayer does not feel that there is any necessity to kill." The circumstances of a case may at least make it a question for the jury, whether a killing was not in pursuance of a previously formed design to kill, instead of having been the result of a mere purpose of self-defense, although at the time of the altercation the first overt act may have come from the person slain; still, without further discussion of this view, we are entirely satisfied that the circumstances were not such as could, with any show of reason, have caused the jury to find the killing justifiable or excusable in this case. Armed, as the defendant was, having the pistol in his hand, exactly how soon he does not tell us, and at least before the second lick was struck with the whip, there was no necessity, nor could a reasonable man believe there was any, for shooting the deceased who was in the wagon and had hold on the reins with at least one hand, and was not in a position from which, under the circumstances, the accused could have reasonably believed that he was in danger of incurring any great bodily injury. Section 2388 of the Revised Statutes provides that whoever shall unnecessarily kill another,

whether resisting an attempt by such other person to commit any felony, or do any unlawful act,. or after such attempt shall have failed, shall be deemed guilty of manslaughter. In our judgment it is, to say the least, a clear case of unnecessary killing, and if there was any error in refusing the instruction it is palpably a case of error without injury; and the same is true of the refusal of the other or tenth charge, which it is unnecessary to discuss. No intelligent jury could have returned a verdict for a less degree of homicide had all the rejected instructions been given.

The judgment is affirmed.