WILLIAM SMITH, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Upon a trial for murder the prisoner offered in evidence threats made against himself by the deceased, but as the evidence in the case failed to show any overt act on the part of the deceased at the time of the homicide indicating an intention to then execute his threats, the evidence so offered was properly excluded by the court.

2. Where illegal testimony has been admitt d, it is the duty of the court to strike it out.

3. If a man, whose life has been threatened, meets and slays his adversary under such circumstances as show that at the time his adversary was making some demonstration indicating an intention to then execute his threats, and that he believed, and had reasonable ground to believe, that his life was then in danger, or that he was in danger of great bodily injury, such homicide is justifiable, although it may turn out that the deceased had no intention at the time to execute his threats. The party threatened is to judge from the circumstances by which he is surrounded *and as they appear to him ;* but when a man acts upon appearances and takes the life of his fellow man, he does it at his peril, and he cannot justify such killing unless there are circumstances which would induce a reasonably cautious man to believe that it was necessary to save his own life, or to save himself from great personal injury.

4. When a man has been threatened he may go wherever his legitimate business calls him, but he has not the right to lie in wait for and slay his adversary, and if he does so it is murder in the first degree.

5. Where the court gives an erroneous charge which is favorable to the accused, such charge is no ground for reversal.

6. Where counsel make improper statements to the jury, it is the duty of the opposite party to call the matter to the attention of the court, and when this is done it is the duty of the court to rule upon it ; but where the objection was not insisted upon and no ruling had, the appellate court cannot consider it.

7. The record of a judgment in a criminal case contains this entry : "Thereupon came a jury, to-wit : (naming them) twelve good and lawful men, who were duly elected and sworn to well and

truly try and true deliverance make between the State of Florida and the prisoner at the bar :" *Held*, That is sufficient to show that the jury were properly sworn in accordance with the statute, to "well and truly try, and true deliverance make," between the State of Florida and the defendant, according to the evidence.

Writ of error to the Circuit Court for Marion county.

The facts of the case are stated in the opinion of the court.

*J. W. Couch* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MITCHELL, J.: The plaintiff in error was convicted in the Circuit Court of Marion county on the 31st day of December, 1888, for the murder of James Bailey; motion made for new trial which was overruled, and the plaintiff in error was sentenced to death; and the case is now before this court upon writ of error, and the following errors are assigned :

1. The court erred in sustaining the motion of the State Attorney to strike out of the testimony of witness, George Pelt, that part of the conversation detailed by him, which related to threats made by Bailey against William Smith, plaintiff in error.

2. The court erred in refusing to allow the plaintiff in error to prove by witness, G. N. Rushing, the threats against his life made by deceased, and communicated to plaintiff in error previous to the killing a short time.

3. The court erred in not allowing the witness, Brown Crowal, to testify as to what he had heard the deceased say in regard to the difficulties existing between plaintiff in error and deceased previous to the killing.

4. The court erred in charging the jury (third charge) " that when threats by deceased to kill prisoner have been proven it would not justify the prisoner in killing the deceased, unless it is shown to your satisfaction that the killing was necessary to save the life of the prisoner at the time deceased was killed, and you will look to the evidence to see whether at the time of the killing the deceased had the means in hand to effect the death of the prisoner and was making demonstrations showing an intention on his part to effect the death of the prisoner and execute the threats."

5. The court erred in charging the jury (in fifth charge) " that if the evidence is such as to create in your minds the moral conviction of the prisoner's guilt, then you must find him guilty."

6. The court erred in overruling the motion of plaintiff in error for a new trial.

7th. The oath required by statute was not administered to the jury in the trial of the cause.

The first error assigned has reference to a conversation testified to by one of the State witnesses, that he had with the accused and some other parties a short time prior to the killing of Bailey, at which conversation the witness says that the defendant made threats—stating what they were —against Bailey. On the cross the defendant asked the witness if Bailey did not in said conversation threaten the defendant. The witness answered that Bailey did make such threats, and stated what they were. The State Attorney moved the court to strike out the evidence of the witness as to threats made by Bailey against the defendant, which motion was granted and the defendant excepted. In considering this part of the case, it is necessary to give the substance of the evidence, in order that the questions involved may be properly understood. The evidence tends

to show that there had for some time been bad blood between the defendant and the deceased, and that the defendant had at different times said that he intended to kill the deceased. Bailey was killed by gun shot, and the shooting occurred at about, or a little after, dark. In the afternoon of the day on which the shooting occurred the defendant was seen with a double-barreled shot gun heavily loaded, and he was making threats against the life of Bailey. About dark, or a little after, Bailey and another man, Alexander, were at a barn, in the village of Silver Springs. Alexander, as he says, started off to water his mules, and Bailey was to make a fire. That the public road ran close by the barn, and that when he (Alexander) had returned from watering his mules and was near the barn he saw the deceased get out of the barn lot into the public road ; that witness heard no words that passed between the deceased and the defendant—nor does he say that he heard any; that he (Alexander) was about thirty yards from the deceased when he got over the fence into the public road ; that after getting in the road the deceased took three or four steps in the direction of a wagon tongue which was projecting out of a shed, when witness heard the report of a gun, saw the deceased get back over the barn fence and saw him fall dead, and that just after the shot was fired he saw the defendant come from behind the barn door and go off with a gun trailing in his hand ; that the deceased was shot in the breast; that the wound was about as large as the palm of witness' hand, and it looked like it was made by buckshot ; that just after the gun was fired he saw the defendant near where the wagon tongue was projecting from the shed; that the defendant was in the road all the time, *but that he did not see him when the gun was fired.* There is much other evidence corroborating that of Alex-

ander in many respects, but Alexander was, it seems, the only eye witness to the difficulty.

That the deceased had made threats against the defendant, and the defendant against the deceased, is shown by the evidence, and evidently it was the intention of counsel for defendant to get before the jury the threats made by deceased against the defendant for the purpose of showing that at the time of the killing he had reasonable ground to believe that he was then in danger of being killed by deceased or suffering great personal injury at his hands. But under the circumstances as shown by the evidence, there was no error in the court below excluding from the jury threats made against the defendant by the deceased. Bond vs. State, 21 Fla., 738. There was much more reason for admitting in evidence threats in the Bond case than is shown in the case at bar. In the former, as in the case at bar, threats had been made by the deceased, who, with friends, had gone to the place where the difficulty occurred, and had deposited their arms in a house near by, and when Bond fired the fatal shot, the deceased was approaching the house where he had left his gun, and it may have been for the purpose of procuring his gun and using it upon Bond. In the case at bar the deceased had made threats against the defendant, but there is not the slightest evidence to show that at the time the shooting occurred the deceased was doing anything evincing a design to execute his threats, unless it be so shown by the statement of the defendant. This statement is to the effect that the defendant was going along the public road when the deceased, who was in the barn yard, told defendant to stop, that he wanted to see him ; that defendant did not stop, and that the deceased then got over the fence and again told defendant to stop, and that he kept coming towards defendant ; that defendant then turned and said : " Jim, stop, and don't come any

nearer to me; you are close enough for me to hear anything you have to say. He started towards me again, and I told him again to stop, and not to come any nearer to me, and he started a third time towards me, and I told him the third time to stop, but he did not, and I knowing that Bailey was a great deal better man than I was, and fearing that he was going to kill or injure me in some way when he didn't stop coming towards me the third time I asked him to stop, I shot."

Now, take this statement—which was doubtless the most favorable the defendant could make—there could be no necessity for his taking the life of Bailey. It does not show that Bailey made any demonstration showing an intention to injure or molest the defendant in an manner. It does not show that Bailey was approaching the defendant rapidly or in a threatening manner; they were both in the public road where the deceased had equal rights with the defendant to be. But the defendant says that he was afraid that Bailey would kill him or do him some injury and that he shot. What cause had the defendant to fear this result? Under the circumstances we can see none. So far as the evidence shows the deceased was not armed; the defendant was armed with a double barreled shot gun heavily loaded, and the idea that he, under such circumstances, believed, and had reasonable ground to believe, that he was in danger of being killed or suffering great personal injury, without any overt act on the part of the deceased indicating an intention at the time to carry his threat into execution, is simply absurd to the mind of any one but a coward, and no one will, we presume, contend that one may kill another through pure cowardice. The law neither justifies nor excuses a homicide under such circumstances. Wesley vs. State, 37 Miss., 327; Evans vs. State, 44 Miss., 762; Myers et al. vs. State, 33 Texas, 525; Pritchett vs. State, 22 Ala., 39;

Selfridge vs. Commonwealth, Horrigan and Thompson's Criminal Defences, 1 ; Dyson vs. State, 26 Miss., 362 ; Head vs. State, 44 Miss., 731 ; Rippy vs. State, 2 Head, 217.

There was no error in the court ordering the evidence as to the threats made by the deceased against the defendant stricken out. In all cases where illegal evidence has been admitted it is the duty of the judge to strike it out when called to his attention.

The second and third errors assigned are substantially covered by the first, which we have fully considered, and for this reason we do not think it necessary to consider them or either of them again.

The fourth error assigned is as to the third paragraph of the court's charge. To take this part of the charge and consider it alone, it is open to the objection urged against it, but taking and considering it with other paragraphs—considering the whole charge together—it is substantially correct so far as it goes. This is the third paragraph of the charge of the court complained of : " The court charges you that when threats by the deceased to kill the prisoner have been proven it will not justify the prisoner in killing the deceased, unless it is shown to your satisfaction that the killing was necessary to save the life of the prisoner at the time the deceased was killed, and you will look to the evidence to see whether at the time of the killing the deceased had the means in hand to effect the death of the prisoner, and was making demonstrations showing an intention on his part to execute the threats and to effect the death of the prisoner." This part of the charge is clearly erroneous, because it withdraws from the jury the consideration of the question as to whether the defendant believes, and had reasonable ground to believe, that he was at the time in imminent danger of receiving great personal injury from the deceased ; and it withdraws from the jury the consideration

of the fact as to whether the prisoner at the time believed, and had reasonable ground to believe, that his life was in imminent danger from the deceased, of all which facts the jury are the sole judges. The charge is also erroneous in stating to the jury that it was their duty to look to the evidence to see whether at the time of the killing the deceased had the means in hand to effect the death of the defendant, for it might be that the conduct—the actions—of the deceased were such as to induce a reasonable, cautious man to believe, from the circumstances by which he was surrounded, that the deceased at the time intended to carry the threats he had made into execution, and if so, then he had the right to act from the circumstances *as they appeared to him*, without actually waiting to see whether his adversary had the means in hand to carry his threats into execution. But where a man acts upon appearances, and takes the life of his fellow man, he does it at his peril, and he cannot justify such killing unless there are circumstances which would induce a reasonably cautious man—not a coward—to believe that it was necessary to save his own life, or to save himself from great bodily injury. To justify the killing there must be an overt act on the part of the deceased, showing an intention to carry his threats into execution, before the party threatened is justified in killing his adversary, but after the overt act is proved, such as to induce a reasonably prudent man to believe that his adversary intended to execute his threats and he kills his adversary, he is justified, notwithstanding it may turn out that he was actually in no danger at the time.

The fourth paragraph of the charge is : "If you are satisfied from the evidence that the prisoner killed the deceased, and that the killing was necessary to save the life of the prisoner, or from great bodily injury, then you will find the prisoner not guilty."

This paragraph materially modifies the third, and when taken together they are substantially correct so far as they go, but they do not go far enough—they do not contain all the law of the case. But suppose the whole of the charge of the court as to the threats made by the deceased against the defendant to be erroneous, the defendant could not possibly have been injured thereby. That it was error for the court to charge upon threats which had been ruled out, and which were not legally before the jury, is evident, but if such charge had any weight, it was in favor of the prisoner, and he has no right to complain at an illegal charge which was favorable to him.

There was no error in the fifth paragraph of the charge.

The grounds of the motion for new trial, with two or three exceptions, are contained in the errors assigned, and we will, therefore, not consider them again.

The second ground of the motion for new trial is: "Because the court erred in refusing to allow the question as to relative size and strength of the deceased, and the defendant to be asked of said witness on cross-examination." There is nothing in the evidence before us to show that any such question was propounded to any witness who testified in the case.

The sixth ground of the motion is: "Because the State Attorney, in his argument to the jury, stated that the county was burdened with crime, and that the good citizens of the county were watching them and looking to them to put down crime." There is nothing in the record to show that there was any objection to this language alleged to have been used by the State Attorney, nor is there anything to show that the language was even called to the attention of the court, and hence, if the State Attorney used the language imputed to him, it is too late now to object to it. If the language was improper, it was the duty of the counsel

for defendant to call the matter to the attention of the court and to have a ruling thereon, and then the question could be passed upon by this court.

The eighth ground of the motion is : " Because the verdict of the jury is contrary to the evidence and the weight of the evidence." This question has been carefully considered, and after doing so, we are satisfied that the verdict is fully sustained by the evidence.

The only remaining question in the case is that raised by the seventh error assigned : " The oath required by statute was not administered to the jury in the trial of the cause." The statute (McClellan's Digest, 447, section 12,) prescribes the following oath in capital cases : " You shall well and truly try, and true deliverance make, between the State of Florida and the prisoner at the bar, whom you shall have in charge, according to the evidence. So help you God." What purports to have been the oath administered in the case at bar appears in a statement upon the record is as follows : " Thereupon came a jury, to-wit: (naming them) twelve good and lawful men, who were duly elected and sworn to well and truly try and true deliverance make between the State of Florida and the prisoner at the bar." There was no ob jection to this oath, it was not set up as a ground for new trial, nor was it ever assailed until the cause came before this court, when it was raised by the assignment of errors. Every fair intendment is in favor of the correctness of the proceedings in the court below, and applying this rule, and under the facts shown by the record, is it not a reasonable conclusion that the oath prescribed by the statute was administered to the jury ? The Circuit Judge before whom the case was tried, and there is none more just or humane, in the first paragraph of his charge to the jury says : " You have been elected, tried and sworn." The record shows that the jury were " duly elected and sworn," and counsel

for the defendant, in their motion for new trial failing to allege that the oath administered to the jury was not that prescribed by the statute, evidently had no idea that the prescribed oath had not been followed, otherwise they would have embodied it in their motion for a new trial, and then the matter would have been brought to the attention of the court and settled ; this was not done, and it is but fair to assume that the alleged error had no foundation in fact. There is another circumstance which strikes us with some force, and that is, that the assignment of error, which raises the question, was added to the assignments after the signature of counsel. This may have been a mere omission, or it may be, which is more probable, that subsequently in looking over the bill of exceptions they discovered the alleged defect in the oath to the jury, and if so, they certainly did not know of the alleged defect until that time.

In the case of the State vs. Pearce, 14 Fla., 159, Mr. Justice Westcott, in speaking for the court, says : " As to the petit jury, and the jurors for this purpose impannelled and returned, to-wit : (naming them) being called, came, who being elected, tried and *sworn to speak the truth of and concerning the premises*, upon their oath say, &c. Thus we see that the simple statement by way of narrating the history of the conviction that the jury were elected, tried and sworn to speak the truth of and concerning the premises is sufficient. With such an entry, the legal presumption is that the proper oath was administered." Citing Appendix to 4 Black. Com.; 3 Lord Raymond, 36, 51. We think that from the statements appearing on the record, the legal presumption is, that the proper legal oath was administered to the jury in the case at bar.

And now after a thorough and careful consideration of the whole case, we can see no cause for reversal, and therefore, the judgment of the court below is affirmed.