WILLIAM J. LANE, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A homicide is justifiable under the laws of Florida when committed in the lawful defense of a person when there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury and there shall be imminent danger of such design being accomplished. The danger need not be actual, but may be apparent, and the slayer is to judge from the circumstances

by which he is surrounded and as they appear to him; if he acts upon appearances he does so at his peril, and can justify the killing only where the circumstances are such as to induce a reasonably cautious man to believe that the killing was necessary to save his own life, or protect him from great personal injury, but unless a reasonably cautious man would entertain the same belief from the same appearances, of which the jury are the ultimate judges, it will be no defense even though the belief of danger was honest.

2. The belief of the accused as to the apparent necessity to kill in order to save his own life or protect him from great personal injury must be based upon facts and circumstances justifying such belief, and where the evidence authorizes the submission of this question to the jury the belief of the accused is material, and it is error to refuse to permit him, who is permitted by statute to become a witness in his own behalf, to testify to his belief based on such facts and circumstances.

CARTER, J., dissents.

3. The court instructed the jury that "before a person can avail himself of the defense that he used a deadly weapon in defense of his life and be justified, he must satisfy the jury that the defense was necessary at the time; that he did all he could to avoid it, and that it was necessary to protect his own life, or to protect himself from such great bodily harm as would give him a reasonable apprehension that his life was in immediate danger." Held to be erroneous; (a) it is imposed upon the accused the duty of satisfying the jury that the defense was necessary, whereas if the evidence raised a reasonable doubt it will be sufficient; (b) though an actual necessity to kill did not exist, yet if the circumstances were such as to induce a reasonably cautious man to believe his life to be in imminent danger, or that he was in imminent danger of receiving great personal injury, it will be sufficient.

4. In determining the correctness of charges the court should

consider them as a whole, but where a special charge in itself announces a patently erroneous proposition of law, it must affirmatively and clearly appear that the presumptive harm caused thereby has been entirely removed, or the judgment should be reversed.

5. The charge set out in the third head-note being erroneous and embodying the specific view that if a deadly weapon was used the accused must satisfy the jury that the killing was necessary to protect life, is not cured by other charges given in the case.

(Carter, J., dissents.)

6. Where the evidence on the part of the State affords no basis for the introduction of threats on the part of the deceased, but that produced for the defense shows such action or demonstration on his part, at the time of the killing, as to authorize their introduction and they are admitted, it is not accurate for the court to instruct the jury that if they find there was no evidence tending to show that the deceased had, at the time of the killing, in fact or apparently sought a conflict with the accused, or was actually or apparently making some demonstration of attack towards the accomplishment of his threats, then they could not take into consideration any threats made prior to the killing, and especially when they were not communicated to the accused. The threats having been admitted on the basis of the overt acts shown by the defense the jury should not be told to disregard them if they find there is no evidence of such overt acts, but the rejection of the threats should be made to depend upon whether the jury believed such evidence on the part of the defense.

Writ of error to the Circuit Court for Sumter County.

The facts of the case are stated in the opinion of the court.

*R. W. Davis, R. A. Burford* and *W. F. Himes,* for Plaintiff in Error.

*William' B. Lamar,* Attorney-General, for, the State.

MABRY, J.

The plaintiff in error was indicted at the Fall term, A. D. 1901, of the Circuit Court for Sumter county for the murder of George S. Offerman, and his trial resulted in a conviction of murder in the second degree. A writ of error was sued out to review the judgment and proceedings of the trial court, and numerous assignments of error are made. After a careful consideration of the entire record the court is of the opinion that the judgment must be reversed for the reasons hereinafter stated, and the conclusions on these points make it unnecessary to specifically consider assignments as to which we find no error, and some relating to irregularities in the ordering, drawing and summoning of petit jurors that need not necessarily arise again.

The trial of the accused occurred the second week of the court, and in the morning of a day of the first week the court ordered a venire to issue for twelve men drawn from the regular jury box to serve as petit jurors for the second week of the court, and also a special venire of eighty-eight men, from which to complete a jury in the case against the accused. The eighty-eight men were also drawn from the jury box. An irregularity occurred in the drawing of the jury, and in the afternoon of the same day, and in the absence of the accused from the court room, the court amended the order for the drawing made in the forenoon, and also ordered an additional

special venire for jurors to serve in the case.   The irregularity in the drawing of the jury need not occur in another trial, and no further reference to the assignments on this point will be made, except to state, without deciding, whether the irregularity was sufficient to cause a reversal, or whether the presence of the accused in cases of felony iis indisipensable at the ordering and drawing of a special venire in his case, that it is always the safest course to have the accused personally present when the ordering or drawing of a special venire is made.

The accused was book-keeper and in charge of a store run in conection with a saw mill at the place where the homicide occurred.   In detailing as a witness in his own behalf the circumstances of the homicide, the accused testified that "Mr. Offerman came in and called for his check, and when giving it, gave out others to other parties.   And in a short time he came to the place where I gave them out and said his check was wrong.   I took his check and looked at it, referred it to my office book and saw it was correct there; then went to the time book, which was turned in by Mr. Steadman, and compared them; found them all to be the same.   In the meantime he came around in the office where I was and said the check was not right, and I explained it to him, showing where it was, according to the time that had been turned in to me; he said all right if the check is all right. He said it seemed that I wanted to kick up some disturbance about it.   I told him 'no,' that the check was right according to the time I had received from Mr. Steadman, and I could not make it out otherwise.   Then I told him I did not care to have any further talk and trouble about the matter, and to get out of the office.   He hesitated a few minutes.   I slightly pushed him with my left hand

and told him to get out of the office, and go on and hush; that I did not want any disturbance at all. He said he would get out of the office, and did so very slowly after I pushed him. In the meantime he was saying it was me that wanted to kick up a row. I told him, after replying to that, that I did not want to kick up any row; to go on and hush; that I had asked him as a gentleman to get out. There was some words, oaths, passed by each of us. After the talk, I had ordered him out. I had asked him to hush, to get out; he then said he would get out if I would. There was some other oaths used by each one of us, and he was walking up and down the counter outside of the office. It hushed for a few minutes, a short time. I do not know how many minutes, only a short time; he commenced talking again about his check, it was not he that wanted to raise the disturbance; wanted to raise hell, I believe is the way he expressed himself. Then I stepped up and said 'no, I don't want to raise no hell; I had asked you to get out of the office as a gentleman. Go on out Mr. Offerman; I don't want to have any disturbance. He said he would get out, but did not leave. He walked then backward and forward up the counter. Then I cursed and told him to go out. He turned and cursed and started towards me. I was standing at the desk in my office where I had been at work after giving out the checks. Seeing him make a start towards me, and both of us using such words as we did—we did not curse each other but they were curse words by both of us, which, of course, were very hard feelings between us —seeing him start towards me, and knowing that a hatchet and deer foot were lying on the counter, which I knew he had been looking at, as his face was turned towards them quite a while, I turned to my drawer where

a pistol was, took it out and fired, thinking that he was coming on me either to kill or may be beat me, I did not know which, but knowing that if he got these weapons that he would kill me and I fired." He further stated that at the time he fired the deceased was "reaching over the counter making his way towards the office," and he was "reaching over to where the hatchet and deer foot were lying," and that he was "coming towards the weapons and me at the same time." He further stated that the deceased appeared angry and excited and advanced rapidly towards the office and the hatchet and deer foot lying on the counter. The deer foot is a piece of iron about an inch in diameter and about twelve or sixteen inches long with a little split in the end used for pulling nails and prizing open boxes. Either the deer foot or the hatchet is capable of producing death. The accused was in what is called the office which was formed by a small railing gate at the end of the counter and the extension of boxes used for a postoffice. The gate extended from the counter to the boxes and the part behind the counter used as an office was next to the post office and near the gate. The building in which this office was located was used as a store house with counters on each side as you enter the end of the building. In answer to a question of which way he had of getting out of the office, the accused stated there were "two windows there, but both of the sash were down. I kept them down in order to keep people from coming out from other parts of the store —heavy sash, both of them; the blinds were open, but the sash were down, and there was no way for me to get out only where Mr. Offerman was, behind the counter or out of the gate." When the deceased was shot he was on

the outside of the counter near the gate that opened into the office.

The following question was propounded to the accused, viz: "You say, Mr. Lane, that at the time you fired you believed from Mr. Offerman's advancing with his hand extended that he was going to seize one of those weapons, and you at that time fired because you believed he was going to take your life or beat you; I believe you said that?" The State Attorney objected to the witness answering the question upon the ground that it was incompetent for him to testify what his belief was at the time he fired; that he could only state what the deceased was doing. The court sustained the objection and stated in the presence of the jury that the defendant could not testify as to his belief, to which said decision and ruling the counsel for defendant then excepted. He was then by his counsel asked to state what he did say on that line, and his reply was: "I said seeing him approach this office and approaching these things on the counter—hatchet and deer foot—that I believed he was coming to either murder me or beat me, and I had no way of getting out, or protecting myself, only the way in which I did it." He was further asked, "Mr. Lane, I am going to get you to state whether or not your belief on that point, or apprehension of danger was a real, honest belief on your part?" Again an objection was made on behalf of the State, on the ground that it was incompetent for the defendant to state in evidence his belief, or whether the same was genuine and real at the time he fired; that such evidence would be only an opinion, and therefore inadmissible; that from the surrounding facts and circumstances the jury were to infer the defendant's belief and whether the same was reasonable. The court sustained

the objection and an exception to the ruling was taken. The ruling of the court did not go to the form of the questions propounded, but was based upon the view that the defendant could not testify to his belief, as this was a question for the jury to ascertain from all the surrounding circumstances. If the ruling can be sustained, it must be upon the ground stated by the court, as no other objection upon which it can be sustained was interposed.

The ruling excluding from the jury the testimony of defendant, that he believed under the circumstances of the case his life was in danger, or that he was in danger of receiving great personal injury, was erroneous. He had the right to testify as to his belief and that it was genuine—not feigned or a pretense. On the subject of self-defense our statute provides that a killing is justifiable when committed in the lawful defense of a person when there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury and there shall be imminent danger of such design being accomplished. Under this statute it has been repeatedly held by this court that the danger need not be actual, but may be apparent. The accused is to judge from the circumstances by which he is surrounded and as they appear to him, but if he acts upon appearances and takes life, he does it at his peril, and he can not justify the killing, unless there are circumstances which would induce a reasonably cautious man to believe that it was necessary to save his own life, or to save himself from great personal injury. Smith v. State, 25 Fla. 517; 6 South. Rep. 482; Pinder v. State, 27 Fla. 370, 8 South. Rep. 837; Morrison v. State, 42 Fla. 149, 28 South. Rep. 8 S. C.

97. The belief of the accused as to the apparent neces-
sity to kill in order to save his own life or to protect him-
self from great personal injury is material, and this has
been announced by this court in the cases of Lovett v.
State, 30 Fla. 142, 11 South. Rep. 550 and Wilson v.
State, 30 Fla. 234, 11 South. Rep. 556. The following
is from the Lovett case, viz: "The seventh charge was
that to excuse homicide there must exist on the part of
the slayer an actual necessity to kill in order to prevent
the commission of a felony or great bodily harm, or a
reasonable belief in his mind that such necessity exists.
The objection made to it is, that if a ground for a rea-
sonable belief existed, it was immaterial whether the de-
fendant believed it or not, and that the attention of the
jury should not have been drawn to the existence or
non-existence of such ground, and not to the conviction
of defendant's mind except as to a result from the pres-
ence or absence of such ground. If there is not an actual
necessity to kill in order to save one's life or prevent
great bodily harm, there must, to successfully invoke the
plea of self-defense, be such an apparent necessity as
would naturally cause a reasonably cautious or prudent
man to believe that the necessity was actual, and acting
under these circumstances, a defendant will be accredi-
ted by the jury with the belief that the danger was
actual, and the killing will be held excusable. The law
regards homicide committed under such circumstances of
apparent danger as done under the impelling influence
of a reasonable belief that the stated necessity exists,
and therefore excuses the killing the same as if the neces-
sity had been real, instead of merely apparent; but it
does not regard the belief as immaterial. Smith v. State,
25 Fla. 517, 6 South. Rep. 482. If it did, the principle

would be to justify homicide when the slayer does not feel that there was any necessity to kill." In the Wilson case it is held that there must be both a belief and reasonable ground to believe. An abundant authority supports the view that the belief of the defendant is material and that a defendant when a competent witness may testify as to its existence in good faith. Commonwealth v. Woodward, 102 Mass. 155; Wallace v. United States, 162 U. S. 466, 16 Sup. Ct. Rep. 859; Duncan v. State, 84 Ind. 204; Wohlford v. People, 148 Ill. 296, 36 N. E. Rep. 107; Taylor v. People, 21 Col. 426, 42 Pac. Rep. 652; State v. Evans, 33 West Va. 417, 10 S. E. Rep. 792. An accused in this State is made by statute a competent witness in his own behalf, and can, of course, testify to any material facts. The danger, however, must be imminent, that is immediate, and the belief, to avail an accused, must be based upon such a state of facts as to justify a reasonably cautious person to apprehend a design to commit a felony or do some great personal injury. In Padgett v. State, 40 Fla. 451, 24 South. Rep. 145, and in Morrison v. State, *supra,* this court approved an instruction to the effect that unless such belief of danger is reasonable, that is, unless a reasonably cautious man would entertain the same belief from the same appearances, it will be no defense, even though it was an honest belief of danger. The belief must, therefore, be based upon facts justifying it. The view of the Massachusetts court, expressed in the case cited, is as follows: "The proposition upon which this defense must rest, and which was in fact submitted to the jury, consisted of two branches; one the reasonable cause, the other the actual apprehension or thought of defendant and his purpose or intent. Both must exist,

or neither will avail. In determining whether the evidence of an actual apprehension of bodily harm is admissible, the court can not be governed by its own conclusions from the testimony as to the sufficiency of the proof of reasonable cause; but if there is any testimony which, if believed, would warrant the jury in finding that there was such reasonable cause, though it comes from the defendant alone, and is in conflict with all the other evidence in the case, it is sufficient to entitle the defendant to testify in support of the other branch of the proposition, that he did in fact act under such an apprehension." The rule stated by the Supreme Court of the United States in the case cited is, that if the accused believed, and had reasonable ground for the belief, that he was in imminent danger of death or great bodily harm from the deceased at the moment he fired, and if that belief, founded on reasonable ground, might in any view the jury could properly take of the circumstances surrounding the killing, have excused his act or reduced the crime from murder to manslaughter, then it would be error to refuse to allow the accused to testify as to his belief based on the circumstances to which he testified. After a careful consideration of the circumstances attending the homicide in this case, as testified to by the accused, we are of opinion that it was error for the court to rule that the accused could not testify as to his real belief based thereon. We do not express any opinion as to the credence the jury should give to his testimony in connection with the other evidence in the case, as this is a question for the jury. It appears from the statement made from defendant's testimony that he did state, without any objection being made thereto, that he believed his life was in danger, which idea was embodied in intsruc-

tions given by the court to the jury, and on the cross-ex-
amination of the accused he was interrogated as to
whether the facts stated by him were the only basis for
such belief. If the ruling of the court in rejecting the pro-
posed evidence constituted the only error in the case,
we would hesitate about reversing the judgment on that
account, in view of what the defendant did testify to on
the point of belief. The ruling made, however, was error,
and it should be avoided in the future.

The accused introduced evidence of good character as a
peaceable citizen, and in rebuttal the court admitted some
evidence as to specific acts of lawlessness by him. In
view of the subsequent ruling of the court excluding such
evidence from the consideration of the jury, we do not
deem it necessary to say anything on this point.

By a charge prepared and given by the court to the
jury they were instructed that "before a person can avail
himself of the defense that he used a deadly weapon in
defense of his life and be justified, he must satisfy the
jury that the defense was necessary at the time; that he
did all he could to avoid it, and that it was necessary to
protect his own life, or to protect himself from such great
bodily harm as would give him a reasonable apprehension
that his life was in immediate danger." This instruction
was evidently copied from the eleventh head-note in the
case of Gladden v. State, 12 Fla. 562. That case was
decided in 1868 on common law principles, before the
statute on the subject of homicides was passed in that
year. In Dukes v. State, 14 Fla. 499, decided in 1874,
it was pointed out that the statute had made important
changes as to the law of homicide, and several decisions
have since been made in reference to such changes. In
Adams v. State, 28 Fla. 511, 10 South. Rep. 106, decided

in 1891, decisions rendered up to that time on changes made by the statute are referred to and attention called to them. In the case of Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235, substantially the same charge as given in the present case was declared to be erroneous, and there can be no doubt that such an instruction under our statute is wrong. It is wrong for the two reasons given in the Hubbard case as well as another. It is a specific charge on the subect of self-defense and imposes upon the defendant the duty of satisfying the jury that the defense was necessary. The jury need not be satisfied. If the evidence raises a reasonable doubt it will be sufficient. Furthermore, if the circumstances are such as to authorize a reasonably cautious man to believe his life to be in immediate danger, or that he was in immediate danger of receiving great personal injury, it will suffice, though an actual necessity to kill does not exist. The charge also conveys the idea that if a deadly weapon is used in defense of life the accused must satisfy the jury that the killing was necesary to protect life or to protect the slayer from such great bodily harm as would give him a reasonable apprehension that his life was in immediate danger. The statute justifies the killing when done under circumstances authorizing it to protect life or the slayer from great personal injury. The charge is clearly wrong, and after mature reflection we are of opinion that we can not safely hold that its error was fully corrected by other instructions given, or that it was entirely harmless. The court charged on the different degrees of murder, and of what was manslaughter, and submitted to the jury what should be their verdict if they believed from the evidence certain hypothesized states of fact deducible from the evidence. In charge number

twelve the jury was instructed as to the presumption of
innocence in favor of the accused until he was  proven
guilty beyond a reasonable doubt, with an explanation of
what was such doubt.   The erroneous charge above refer-
red to was numbered fourteen and is special on the sub-
ject of self-defense and of the use of a deadly weapon in
defense of oneself.   On the subject of whether the neces-
sity must be real, or apparent only, the court gave several
instructions expressing the view   that  if   the   circum-
stances were such as to justify a reasonably cautious man
to believe that his life was in immediate danger, or that
he was about to receive great personal injury, he would
be warranted in killing, though the necessity to do so did
not in fact exist, but no direct reference was made  in
such instructions to the use of a deadly weapon  or to
what extent the personal injury should go, and no refer-
ence to the sufficiency of the evidence in such a case as to
a reasonable doubt.   Some of the instructions in a gen-
eral way directed the jury that defendant was presumed
to be innocent until the evidence established his guilt be-
yond a reasonable doubt, but there was no specific  in-
struction that in case a person used a deadly weapon in
defending himself it will be  sufficient if  the  evidence
raises a reasonable doubt in favor of a lawful defense.
In the case of Hubbard v. State, *supra,* the judgment was
reversed for giving susbtantially the same change, regard-
less of other general instructions in the  case.   Murphy
v. State, 31 Fla. 166, 12 South. Rep. 453, is referred to
in support of the ruling, and in that case the court in-
structed the jury that "where an *alibi* is set up, the bur-
den of proof is on the defendant, but he is not bound to
prove it beyond a reasonable doubt, and if upon consider-
ation of all the evidence in the case, you have a reasona-

ble doubt that defendants, or either of them, was present when the crime was committed, they, or such of them as to whom the doubt applies, should be acquitted. The proof of an *alibi* must include and cover the entire time when the presense of the accused was required to commit the offense charged. The evidence to support it chould be carefully considered, and must be such as to satisfy the jury that the crime could not have been committed by the person offering proof of the *.alibi.*" The court said "in our judgment the last sentence in the charge is erroneous, and calculated to qualify the correct rule announced above, in that the proof of an *alibi* is sufficient if it, considered in connection with all the testimony, raises a reasonable doubt as to the presence of the accused at the time of the commission of the crime." In the case of Trogdon v. State, 133 Ind. 1, 32 N. E. Rep. 725, it was held that "while it is true that instructions must be considered as a whole, and it is sufficient if taken together they state the law correctly, yet general instructions given can not cure an error committed in giving a specific instruction." It is the rule in this court that in determining the correctness of charges they must be considered as a whole, but where a special charge in itself announces a patently erroneous proposition of law, it must affirmatively and clearly appear that the presumptive harm caused thereby has been entirely removed or the judgment should be reversed. We do not see that we can safely affirm that the erroneous features of the specific charge in reference to the use of a deadly weapon in self-defense have been entirely cured and removed by other instructions given.

The court instructed the jury at the request of the State that "if you believe from the evidence that there

was no overt act by the deceased, and no evidence which at least tends to show that the deceased had at the time of the killing in fact or apparently sought a conflict with the accused, or was actually or apparently making some demonstration of attack towards the accomplishment of his threats, some demonstration reasonably calculated to induce the belief that the execution of the threatened attack had actually commenced, then you can not take into consideration any threats made prior to the meeting and especially when they were not communicated to the accused." This charge is apparently extracted from the views announced by this court in the case of Garner v. State, 28 Fla. 113, 9 South. Rep. 835, in stating the rule for the guidance of the trial court as to the admissibility of previous threats. In the present case the testimony on the part of the State did not apparently afford any foundation for the introduction of threats, but that introduced for the defense, shown by the stated evidence of the defendant, was the basis for the introduction of some threats made by the deceased not long before the killing. When there is no proper predicate for the introduction of threats, as explained in the Garner case, they amount to nothing as evidence in the case, and should be excluded from the consideration of the jury. When they are admissible as dependent upon the commission of an overt act on the part of the deceased, there must be some evidence of the overt act; that is, there must be evidence which at least tends to show that the deceased had at the time of the killing in fact, or apparently sought a conflict with the accused, or was actually or apparently making some demonstration of attack towards the accomplishment of his threat or some demonstration reasonably calculated to induce the belief that the execution of the

threatened attack had commenced. There must be  at
least apparently such a demonstration of an intention to
execute immediately the threats as will naturally induce
a reasonable belief that the party threatened will lose
his life or suffer great personal injury if he does not im-
mediately take the life of his adversary.  Under  such
circumstances threats are admissible because they serve
to explain the overt act or demonstration and show the
reasonableness of the defendant in believing himself to be
in that danger which justifies the taking of life in self-
defense.  Where the theory of the prosecution and its
testimony afford no basis for the introduction of threats,
but the evidence for the defense does authorize their in-
troduction and they are admitted, it would not be error
for the court to submit to the jury the view that if they
accepted the theory of the prosecution, to the exclusion
of that of the defense, they should disregard the threats
entirely, but where the threats are properly before the
jury the court should be careful in submitting the ques-
tion of their disregard as evidence.  If a charge should
accurately hypothesize the facts relied on by the defense
as affording a basis for the use of threats as evidence and
submit the view that if they were disbelieved the threats
might be rejected where the counter testimony of the
State was accepted, no harm could result.   The charge
given by the court asserts the view that if there was no
overt act by the deceased, and *no evidence* which at least
tends to show that the deceased had at the time of the
killing in fact or apparently sought a conflict or  was
actually or apparently making some demonstration of at-
tack towards the accomplishment of his  threats,  &c.
The charge seems to submit that if there was no evidence
on the point, not that if the jury disbelieved what had

been introduced. The court had admitted the threats in evidence on the showing made for the defense, and the defendant had a right to have it considered in connection with such showing without any intimation from the court that such evidence did not exist. If the court sees proper to charge for the State on the effect of the threats as evidence, what is said will enable it to adjust the charge to such state of facts as may arise in the trial. The charge given was followed by one for the accused on the same subject, and the two taken together afford, probably, no just ground for the complaint made by counsel for defendant against the one given at the instance of the State .

The judgment will be reversed and a new trial awarded, and it is so ordered.

CARTER, J., dissenting.

Most lawyers devoting thoughtful consideration to the law of homicide in this State, as embraced in our statute and decisions upon the subject, will be forcibly impressed with the uncertainty of this law, and the difficulty of its administration. The law relating to this subject is of the highest importance, the penalties imposed by it, the severest known to our criminal jurisprudence, and because of its importance it ought to be certain and definite, and not beclouded by the introduction of subtle and refined distinctions and theoretical impracticable qualifications, which can neither be understood nor given practical application by juries. The statute itself is in many respects exceedingly indefinite and uncertain, so much so that a court in many cases can never feel that a particular construction given to it is the correct one.

This court has sometimes felt that the statute was not designed for the purpose of remedying defects in the common law relating to homicide, and of making definite and certain matters relating to that offense which were uncertain at common law, as many other courts have regarded similar statutes, but as creating statutory offenses to be ascertained and prosecuted by reference to the statute alone, without invoking the aid of the common law upon the subject in its construction, and without reference to the common law presumptions upon the subject of homicide, except as they might or might not be drawn and applied by the jury as presumptions of fact, while at other times the court has felt it proper to approve and apply to the law of homicide under the statute, certain legal presumptions recognized by the common law relating to this offense. See Adams v. State, 28 Fla. 511, 10 South. Rep. 106, and the previous Florida cases referred to therein as illustrating some of the rulings along this line. The statute relating to self-defense provides that homicide is justifiable "when committed in the lawful defense of such person when there shall be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished." The statute does not in terms make the defendant's belief of any fact an essential element of his right of self-defense, nor is the word belief used at all. But the court in several cases has held that the accused must believe and have reasonable ground to believe that his life was then in imminent danger or that he was in imminent danger of great bodily injury, or he will not be justified. Smith v. State, 25 Fla. 517, 6 South. Rep. 482; Wilson v. State, 30 Fla. 234, 11 South. Rep. 556; Lovett

v. State, 30 Fla. 142, 11 South. Rep. 550; Ballard v. State, 31 Fla. 266, 12 South. Rep. 865.   It is possible that by the common law the belief was an element in self-defense, and this element recognized by our decisions as neces- sary under the statute must   therefore have been   so found by construing the statute in connection with the common law.   Perhaps the decision in this case will in- troduce a further qualification of the law of self-defense by requiring the defendant to show that his belief was a "real, honest" one, as one of the questions asked the de- fendant and excluded by the trial court was whether his belief or apprehension of danger was a "real, honest be- lief" on his part or not.   In some jurisdictions the de- fendant's belief of imminent danger when   entertained without fault or carelessness on his part is of primary importance, but under our statute a reasonable ground for belief is the essence of the right to act in self-defense, and the belief of the accused, if necessary at all, is of sec- ondary importance and will be presumed to exist when- ever reasonable ground is shown. This distinction should not be lost sight of in considering the decisions in other States upon the subject.   It may be well to remark just here that this court has never held that defendant can testify to his belief, or intimated that testimony upon that subject is admissible, or that the belief would not be presumed in all cases where   reasonable   ground is shown.   Our decisions up to this time seem to divide self- defense into two branches, *viz*:   Reasonable ground to believe, and belief based upon such reasonable   ground. The reasonable ground can exist only where the   defen- dant is surrounded by such circumstances that a reason- ably prudent man, standing in defendant's shoes, know- ing what he knew, seeing what he saw, and hearing what

he heard, would be induced to believe or apprehend a design to commit a felony or to do some great personal injury and that there was imminent danger of such design being accomplished, and if the reasonable ground thus defined does not exist, self-defense can not be invoked, even though the defendant had a belief, or a "real, honest" belief, that reasonable ground did exist, or that his person or life was then in imminent danger. Wilson v. State, 30 Fla. 234, 11 South .Rep. 556; Padgett v. State, 40 Fla. 451, text 458, 24 South. Rep. 145; Frank v. State, 94 Wis. 211, 68 N. W. Rep. 657; Perugi v. State, 104 Wis. 230, 80 N. W. Rep. 593. I cite Wisconsin cases because the Wisconsin statute upon the subject of homicide is almost identical with our statute of 1868, which, though amended in some respects by our Revised Statutes, is still the basis of our law of homicide. It has also been held that if the evidence upon the subject of self-defense in a case goes far enough to raise a reasonable doubt in the minds of the jury, it is sufficient for acquittal whether the jury are satisfied upon the point or not. Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235. Applying this rule to the two branches of the law of self-defense, it results that there need not in fact be reasonable ground to believe, as required by the statute, nor in fact a belief as required by our decisions, but that a reasonable doubt, whether or not a reasonable ground existed, coupled with a reasonable doubt whether or not defendant believed, will require acquittal; while on the other hand a finding that reasonable ground existed, but that defendant had no belief upon the subject—having acted instinctively without time for forming a belief—must necessitate conviction, and hereafter perhaps in consequence of this decision juries will be further mysti-

Lane v. The State of Florida—Dissenting Opinion.

fied and confused by being required to determine whether there is a reasonable doubt as to the belief being "real and honest," and required to convict persons having reasonable grounds to believe, and believing, in cases where the belief is not a "real and honest" one. It seems to me that the law upon the subject, just at this point, goes to seed as it were, and is incapable of any further growth or higher development. It becomes too finespun and abtruse to be intelligently administered by courts and juries, and in my humble judgment the doctrine relating to the defendant's belief can not be further extended along the lines pointed out in the previous decisions of this court without destroying its efficiency and vitality. I think we may safely hold as was intimated in Lovett's case, 30 Fla. 142, 11 South. Rep. 550, that while the law does not regard the defendant's belief as immaterial, yet the law regards homicide committed under such circumstances as under the statute constitute reasonable ground to believe, as done under the impelling influence of a reasonable belief that the necessity exists and therefore excuses the homicide the same as if the necessity had been real, instead of merely apparent; in other words, that when reasonable ground is shown to exist, the law conclusively presumes the belief, and therefore evidence upon that subject is immaterial. This is evidently in keeping with the language of the statute which does not make the belief an essential element to be proved upon the trial (White v. Maxcy, 64 Mo. 552; State v. Gonce, 87 Mo. 627), and I am not sure that a different rule obtained at common law. In this view it seems to me the court below ruled correctly in declining to permit the defendant to testify to his belief, or to state that he entertained a "real, honest" belief. I am also of opinion that

the ruling was correct for another reason, *viz*: because there was no evidence showing reasonable ground for such a belief, and, therefore, the defendant's belief under our decisions was wholly immaterial. This question 1 will discuss more at length hereafter. I am also of opinion that conceding the law to be that defendant had a right to testify to his belief, the error in rejecting the two questions propounded upon that subject was harmless, in view of the fact that defendant was during his examination, permitted to state his belief and the grounds upon which it was based without objection as is shown by the statement of defendant's testimony in the opinion of the court.

In respect to the fourteenth instruction given by the trial court, it is, under recent decisions of this court, unquestionably erroneous, if considered alone without reference to other instructions given, but I do not agree to the proposition that when read in connection with the other institutions in the case, the jury could have been misled by it. The jury we must assume construed and applied it in connection with the other instructions, and those instructions fully secured to the defendant the right to an acquittal, if from the evidence a reasonable doubt of his guilt appeared, or if he acted in lawful defense of himself when the danger was only apparent as well as when real. More than one specific instruction upon the subject of self-defense emphasized the fact that apparent danger was all that the law required, and in each of them the danger of great bodily harm as well as danger to life were fully recognized as elements in self-defense. By one instruction the jury were told that the law did not require the defendant to prove himself innocent, but that it required the prosecution to prove him guilty  t

the satisfaction of the jury beyond all reasonable doubt, and unless this was done defendant must be acquitted. Under my view of the matter, taking the entire charge of the court into consideration, the general language used in the fourteenth instruction was fully explained and qualified by the other instructions, so that it did not and could not convey the broad meaning which, standing alone, it would naturally bear. The jury could not under the entire charge have supposed that the law required the defendant to *satisfy* them further than to produce in their minds a reasonable doubt, or that it required the danger to be real, or to be to life as distinguished from great bodily harm, or great personal injury. I can not procure my consent to a reversal of the judgment upon the supposed errors in this instruction, for to my mind those errors are entirely eliminated when the charge is taken as a whole. I am also of opinion that there was no testimony in this case which, if true, would justify the defendant in his act on the ground of self-defense, and therefore, that any error that may have been committed by the court in refusing to permit the defendant to testify as to his belief, or in giving charges upon the subject of self-defense should not work a reversal of the judgment. Under our statute, as has been shown, there must be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and reasonable ground to apprehend imminent danger of such design being accomplished, in order to justify the accused. If this reasonable ground does not exist, his act can not be justified, though he believed that the reasonable ground did exist, or that his life was in danger. If, therefore, the testimony in the case was such that upon no view of it could the jury lawfully find that such cir-

9 S. C.

cumstances existed as would constitute reasonable ground, that is, such as would induce a reasonably prudent man to believe that the deceased designed to commit a felony or to do some great personal injury, and further to believe that there was imminent danger of such design being accomplished, there is no self-defense in the case, and as no other defense was suggested by the evidence, the defendant could not lawfully have been acquitted, even though error in these respects had intervened. The proof is ample that defendant killed the deceased, and if he did not act in self-defense, his act was unlawful. Of course the jury must ascertain the existence of the facts which go to make up a case of self-defense, but when the facts are ascertainned the law declares whether such facts are sufficient to constitute self-defense. Gladden v. State, 12 Fla. 562; Long v. State, 52 Miss. 23. In more than one case this court has held as a matter of law that certain facts shown in evidence did not constitute self-defense, and has held that error in instructions given upon the subject of self-defense or in refusing instructions upon that subject in such cases should not work a reversal of the convictior. Smith v. State, 25 Fla. 517, 6 South. Rep. 263; Ballard v. State, 31 Fla. 266, 12 South. Rep. 865; Johnson v. State, 29 Fla. 558, 10 South. Rep. 686. There is no testimony aside from the testimony of the defendant as a witness tending to show any overt act on the part of the deceased. Two witnesses for the defense testified to threats, one that about a week before the homicide deceased said he thought defendant did not like him; that if defendant wanted a fuss he could get it and that deceased would shoot it out or cut it out with him; another, that a few minutes before the homicide deceased said he was going to see defendant about his

check, and if defendant did not make it right he would go into the office and knock him out. Neither of these threats was communicated to defendant before the homicide. The defendant as a witness stated that the pistol he used was a self-cocking one; that the deceased never secured either the deerfoot or the hatchet; that he stood at his desk when he fired, shooting over the lattice gate between him and the deceased, and that he was about eight or ten feet from deceased when he fired. The remainder of his testimony relating to the claim of self defense is substantially stated in the opinion of the court. Under the circumstances detailed by this witness, in my judgment, there was no such state of affairs as would have induced a reasonably prudent man situated as defendant was to believe that his life was in imminent danger, or that he was in imminent danger of great personal injury. There had been no previous quarrels between the parties, and though the deceased had made threats against the defendant, the latter did not know it; the deceased was unarmed when shot, therefore did not go prepared with a deadly weapon to execute his threats, and the defendant had no cause to suspect that deceased was armed or designed to injure him when the quarrel between them first began. The defendant during the controversy about the check gently pushed the deceased, requesting him to go out of the office, deceased did go after some hesitation, after which the parties were cursing; defendant in his office, deceased walking up and down the counter, but at no time did the deceased say to the defendant anything that indicated a present or future purpose to do him personal injury. Words increased and excitement grew higher and finally while deceased was walking up and higher, and finally, while deceased was walking up and

out. Deceased turned, cursed and started toward defendant, advancing rapidly in an angry and very excited manner, with his right hand extended over the railing of the counter reaching over to where the deerfoot and hatchet were lying, and defendant turned to the drawer of his desk took out his pistol and fired two shots in quick succession. Defendant turned to his drawer for the pistol when he saw deceased thus advancing, secured it and fired before the deceased had succeeded in procuring either the deerfoot or hatchet, if it can be said such was his purpose. Under the facts, as I have stated them, it is not clear that deceased was really or apparently attempting to secure the deerfoot or hatchet, but admitting that he was, where is the fact or circumstance tending to show that he apparently proposed to use it instantly, or to show that he could apparently have used it effectively, at the distance he was from the defendant? The law of self-defense does not ordinarily permit a deadly weapon to be used as a precautionary measure, before imminent danger arises, but only in cases where the design to do great personal injury is apparent and where the danger of such design being accomplished is imminent. It seems to me that the utmost that can be claimed from the defendant's testimony is that there was apparently a design on the part of the deceased to procure a weapon and apparently imminent danger of such design being accomplished, but these facts alone are insufficient to constitute self-defense. Had deceased actually procured the weapon, the defendant would not have been in imminent danger, for with a self-cocking pistol in his hand, he could safely have waited until deceased manifested his supposed design by continuing to advance upon him in a threatening manner after securing the hatchet or deerfoot, thus evi-

dencing a purpose to assume a position where his weapon would be effective. It is not claimed that deceased manifested a purpose to secure the hatchet or deerfoot and throw it at defendant, but rather the contrary, because defendant says he supposed deceased was "coming to either murder me or beat me." To my mind the defendant, according to his own statement, acted too hastily, for with a self-cocking pistol in hand there was no necessity for him to act, or rather the danger to him was not apparently imminent until deceased had placed his hand upon the weapon he was apparently endeavoring to secure, and indicated by some word or act an intention to use it. The word imminent in the statute excludes the idea that defendant may act before there is really or apparently a pressing necessity therefor, and in this case no such necessity existed, according to his own statement. There being no reasonable ground for belief, the defendant's belief is entirely irrelevant, and the law of self-defense does not apply to the facts of this case.

I have not attempted to determine the credibility of any testimony in the case, as it would not be proper to do so, but have considered as true everything in the evidence that tends to support the plea of self-defense, and my conclusion is that there is nowhere in the evidence a showing of reasonable ground for believing that defendant was in imminent danger when he fired the fatal shot. I think this case can be disposed of without passing upon the question whether an accused must be personally present when a special venire for jurors to try his case is ordered or drawn, hence express no opinion upon that subject.